JOSEPH BROKAW, by his guardian, appellant, *vs.* PETER C. PETERSON and JOHN V. M. QUICK, respondents.

The word children does not, ordinarily and properly speaking, comprehend grandchildren, or issue generally. Their being included in that term is permitted in two cases only, *viz.* from necessity, which occurs when the will would remain inoperative unless the sense of the word *children* were extended beyond its natural import, and where the testator has clearly shown, by *other* words, that he did not intend to use the term children in its proper actual meaning, but in a more extensive sense.

Courts of probate are not governed by the same strict rules as a court of construction in reference to the admission of parol evidence. There are a number of cases where mistakes made in preparing a will have been corrected.

Decedent made a will, dated 14th January, 1845. He had then living one son, seven daughters, and four grandchildren, the children of a deceased son. The testator gave to his daughter, Elizabeth, a certain portion of his real estate, and then directed his executors to convert the residue of both real and personal estate into money, and to distribute the same as follows: To his son Peter, two shares; to each of his daughters, with the exception of Elizabeth, one share; and also one share to his four

Brokaw *v.* Peterson.

grandchildren, the children of his deceased son Garret. It was further provided, that if any of said children should die previous to said distribution, the share of such child so dying should go to his or her children. In the year 1850, one of the testator's daughters died, leaving a son, and who, under the above provision of the will, would have taken the share of his mother. The testator then, in 1851, made a second will, in most of its provisions similar to the former one, but with the exception that, after providing for Elizabeth, the devise is made to his *three,* instead of *four* daughters. This will then also provides that, in case of the death of any of his children, the share of such child shall go to his or her children. Under this will it was clear that the son of the deceased daughter would not take. Evidence was offered to show that it was the intention of the testator, by his last will, to give to the son of the deceased daughter the share which would have come to him by force of the former will. *Held,* that as there was no ambiguity on the face of the will, as there was no fraud, and no mistake by the testator as to any fact, the court could not reform the will so as to make it correspond with the presumed intentions of the testator.

*H. M. Gaston* and *G. H. Brown,* for caveators.

*J. F. Randolph,* for executors.

THE ORDINARY. One of the papers in question was admitted to probate by the surrogate of the county of Somerset, as the last will and testament of Cornelius Peterson, deceased. It bears date the fourteenth day of October, 1851. Joseph Brokaw, by his guardian, Frederick D. Brokaw, has appealed from the adjudication made by the surrogate; and the object of this appeal is to reject this paper, and admit to probate another paper writing, purporting to be the last will of the said Cornelius Peterson, or else to admit this other paper, in conjunction with the one proved, in aid of the construction of some of the provisions of the one already admitted to probate.

Waiving all considerations as to the character of this appeal, and the manner in which the questions involved are brought before the court (as they were not questioned on the argument), I shall proceed to decide upon the merits of the case.

On the fourteenth day of January, 1845, Cornelius Peter-

son had then living one son, seven daughters, and four grand-children, the children of a deceased son. On that day he made his will. By it he disposed of all his property, and made provision for all his children and for the children of his deceased son. The clauses of the will, by which he disposes of his estate, are as follows:

" *Item* 3d. I give and devise to my executors the farm, containing about sixty-six acres eighty-four hundredths of an acre, more or less, which I lately purchased of John Van Zant and wife, and three acres of woodland, I lately purchased of Abraham Davis and wife, situated in Hillsborough, in trust for the use and benefit of my daughter Elizabeth, during her natural life, and at her death I give the same to her lawful issue equally, and those who represent them.— *Item* 4th. I authorize my executors, herein after named, to sell and dispose of all the residue of my real and personal property to the best advantage, and the money from thence arising I give to my children, as follows: To my son Peter two shares, to my daughters one share, excepting my daughter Elizabeth; but should the shares of my daughters exceed two thousand three hundred dollars, the price I paid for said farm, then said Elizabeth to be made equal with her sisters in worth even amount they and each of them may receive over said sum of two thousand six hundred dollars.—*Item* 5th. To the four children of my deceased son Garret, to wit, Ellen, Ann Maria, Catharine, and Elizabeth, and to the survivors of them, I give a daughter's share, and they to share equally.—*Item* 6th. If in the course of human events any of my children should die previous to the division of my estate, then that *child* share to descend to his or her child or children, but if no child or children, then to fall in the residue of my estate, and to be divided as aforesaid."

After making this will, and in the year 1850, Adeline, one of the daughters, died. She left an only son, Joseph Bro-kaw, who is the appellant in this case. Under this will, he undoubtedly stood in the place of his mother, and was enti-

tled to one share of the residuary estate, as it was apportioned in the will.

On the fourteenth day of October, 1851, Cornelius Peterson made the will admitted to probate. By it the same devise is made to the daughter, Elizabeth, the same directions given to the executors to sell the residue of his real and personal estate—then follows, " and the money from thence arising I give and bequeath to my children as follows, *viz.* I give to my son, Peter C. Peterson, two shares, to my daughters one share, except my daughter Elizabeth; but should the shares of my other daughters exceed two thousand six hundred dollars (at which sum I value the real estate devised in trust to my daughter Elizabeth), then in such case said Elizabeth to be made equal with her sisters in whatever amount they and each of them may receive over said sum of two thousand six hundred dollars." Then follows the devise to his grandchildren, children of his deceased son Garret, the same as in the former will of 1845, with the exception that the devise is made to his *three* instead of *four* children, one of them having died in the intervening period between the execution of the two papers. He then, in like manner as in his previous will, provides that, in case of the death of any of his children previous to the division of his estate, then the share of such deceased child shall go to his or her child or children.

Under the last will, the appellant can take no interest in the testator's estate; for, by its terms and legal construction, he cannot be substituted in the place of his mother. Under the first will he would take; for by it a portion of the testator's estate was given to each of his children, of whom the appellant's mother was one; and it was provided, that if either of the children should die before the estate should be divided, then the share of such deceased child should go to his or her child or children. By the last will, a portion was in like manner given to each of the testator's children, but at the time of the execution of the will the appellant's mother

R *

was dead, and there is nothing in the will to authorize a grand-child to be substituted for its parent.

The word " children" does not, ordinarily and properly speaking, comprehend grandchildren or issue generally. Their being included in that term is only permitted in two cases, *viz.* from necessity, which occurs when the will would remain inoperative unless the sense of the word " children" were extended beyond its natural import, and where the testator has clearly shown by *other* words that he did not intend to use the term " children" in its proper actual meaning, but in a more extensive sense. 1 *Roper on Leg.* 69.

Courts have inclined towards giving a liberal construction to wills in order to prevent the exclusion of the issue of a deceased child. But the principle upon which the cases relied upon by the appellant's counsel were decided does not bring the present case within the exceptions to the general rule.

In the case of *Giles* v. *Giles* (8 *Sim.* 360), the Vice Chancellor let in an issue of a deceased child, who was deceased at the time of the execution of the will. But he determined that such was the intention of the testator, to be collected from the whole will. He expressly disclaimed any intention of infringing upon the general rule. *Jarvis* v. *Pond* (9 *Sim. R.* 549) was determined upon the intention of the testator appearing on the face of the will, and also to make the will operative, there being no children to answer the term " daughters," as it was used, except the issue of two deceased daughters.

In the will of Cornelius Peterson there is nothing from which such an intention can be inferred. The testator gives to his son, by name, one share of his residuary estate, and to his " daughters" one share each. This could only refer to his *daughters* then living. He provides for the issue of a deceased son, and their representatives as a distinct class ; then he declares, " if in the course of human events any of my children *should* die," referring to an event in *futuro.*

But, on behalf of the appellant, it is alleged that there was a mistake on the part of the testator in not providing

for the appellant, and that he meant this will to be the same in this respect as the will of 1845, and that it ought not to be considered as his last will, unless it is taken in conjunction with the will of 1845 ; that by the will of 1845, the appellant was provided for ; that the testator did not intend to alter his will in this particular; that he so declared, and that the will of 1845 was copied without the testator's being aware of the fact, that the change of circumstances which had occurred by the death of his daughter Adeline affected the legal construction of the terms used; that the will of 1845 contained his instructions to the scrivener, and that these instructions have not been carried out ; and that unless those instructions are admitted as part of his will, and the will made to conform thereto in respect to the appellant, the intention of the testator will be defeated.

The proposition is a plausible one, but it will not bear the test of close scrutiny, and cannot be established without violating long established and wholesome principles of law.

There is no ambiguity upon the face of this will. Its language is certain and precise, and the terms and provisions free from any doubt as to construction. The objects of the testator's bounty—the property devised—the character and extent of the devises and bequests—are all free from ambiguity. There is no necessity of introducing parol testimony to explain any ambiguity, either *patent* or *latent*. Nor can this will be touched on the ground of fraud; for it is not pretended that the testator was even advised as to its terms or mode of execution. There was no *mistake* as to any fact; for the testator was well acquainted with all the facts which have any connection with the property the subject of the devise and with all the individuals whom he made the objects of his bounty. There was no mistake in the scrivener, as to following the instructions given him as to the draft of the will. He obeyed his instructions literally. There was nothing said to the scrivener by the testator, in giving the instructions, to indicate that the legal import of the language which he directed the scrivener to employ was not perfectly

understood and comprehended by the testator. We have the fact that a will was executed in 1845, under the provisions of which the appellant would have been entitled to a portion of the testator's estate. In 1851 he made a new will. It is offered to prove, and it is proved, that prior to making the last will, the testator declared he wanted a new will drawn, because there were interlineations and misspelling in the first will; that he wanted to make a change in the valuation of the real estate he had devised for the benefit of his daughter Elizabeth, and to change the devise as to the children of his son Garret, one of them having died. The declarations of the executors and of the different devisees under the will are proved to show that they always supposed, and that they believed the impression of the testator to have been, that he . had provided in this will for his infant grandson. The evidence is abundant to show that those interested in this estate should never have compelled this appellant to resort to litigation to secure that portion of this estate which it is perfectly manifest his grandfather intended he should enjoy; but it is not such evidence as will justify me in giving the appellant any relief upon this appeal.

It is true that a court of probate is not governed by the same strict rules as a court of construction in reference to the admission of parol evidence. In *Castell* v. *Tagg*, 1 *Curt.* 298, the court went so far as to insert in a will a legacy, which by mistake had been omitted. There are a number of cases where mistakes made in preparing the will have been corrected. 1 *Bradford's Surrogate Rep.* 372.

I have examined with great care all the authorities relied upon in the argument, but am unable to find a warrant in any of them to justify me in relieving the appellant in the present case. In *Burger* v. *Hill*, 1 *Bradf. Sur. R.* 360, the surrogate certainly went very far in admitting evidence and in correcting the alleged mistake. Yet that case is distinguishable in principle from the one before us. The testator devised all his real estate to his mother and sister, and all his personal estate to an illegitimate daughter. He had no

real estate, but was the owner of a store in Greenwich street, which was in fact leasehold estate. He told the scrivener who drew the will that this store was all the real estate he had, and the scrivener, instead of devising the store *eo nomine* to the mother and sister, called this leasehold estate real estate. The surrogate established the will as to the personalty except as to the leasehold premises given to the mother and sister. It will be perceived that the surrogate did not go so far as to correct the mistake by giving the leasehold, as the testator intended, to the mother and sister. It resulted in this, as they were the testator's only personal representatives, and entitled to his personal property.

The cases cited in *Fawcett* v. *Jones*, 3 *Phill.* 442, 1 *Eng. Ecc. R.*, and in the notes, are cases of fraud, mistake, or accidental omissions. They were proved not merely by the declarations of the testator to have been mistakes or omissions, but by the written instructions or memoranda from which the wills were drawn, or by the scrivener to whose neglect or oversight the omissions were attributed. Others are cases where some ambiguity, apparent on the face of the will and parol evidence, was admitted to explain it. As in the case of *Gerrard* v. *Gerrard*, referred to in 3 *Phill.* 444, there was an ambiguity on the face of the will: the words were, " I appoint her executrix and residuary legatee." In the instructions for the will the testator had directed his attorney to insert his wife as residuary legatee. In transcribing the will the testator had not noticed the blank which had been left by the attorney for the insertion of the wife's name.

My conclusion is, that the will of 1851 was properly admitted to probate without any accompanying explanation or qualification.