Perrine v. Newell.

| 49 | 57 |
| 50 | 521 |
| 49 | 57 |
| 862 | 15 |
| 49 | 57 |
| 64 | 458 |
| 68L | 467 |

:SARAH A. PERRINE, executrix of the will of John Perrine, deceased,

v.

CHARLES B. NEWELL, CHARLES W. B. NEWELL, and ANNIE, his wife, ELIZA A. BRADWAY and THOMAS BRADWAY, her husband, DEBORAH TUFT and JOHN V. TUFT, her husband, and WILLIAM NEWELL and ELIJAH W. DUNN, surviving trustees under the will of James Newell, deceased.

1. J. N. devised a farm to W. N. and E. D, whereon his son, C. B. N., 'lived, in trust to rent the same from time to time, and pay to C. B. N. the rents and profits thereof during his life. His will then continued: "And, at the ·death of said C. B. N., I do give and devise all the said lands * * * to his three children, E. B., C. N. and D. T., to them, their heirs and assigns forever." —*Held* that, at the death of the testator, E. B., C. N. and D. T. took a vested ·remainder after a trust estate for the life of their father, in fee, and could mortgage the same.

2. C. B. N. could assign or mortgage his beneficial interest.

3. C. B. N., E. B., C. N. and D. T. borrowed a sum of money necessary to build an embankment to preserve the farm from inundation by a river which bounded it, and consequently from a serious and lasting injury, and, to secure the payment of the sum borrowed, made and executed their bond and a mortgage of the farm to the lender of the money. E. B. and D. T. were married women. Their husbands did not join in the mortgage.—*Held,* that the mortgage as to E. B. and D. T. is a nullity, but that equity will regard the bond as an acknowledgment of a debt which was created for the benefit of the property of the married women, and the mortgage as an appointment of the property described in it for the payment of that debt, and will decree the debt to be a charge upon the property thus appointed, and that the property be sold to pay it.

4. W. N. and E. D., the trustees, were not parties to the mortgage. They made proper expenditures in the execution of their trust which remain unpaid.—*Held,* that they are entitled to hold the land during the life of their *cestui que trust* until their expenditures thus made shall be paid, and that their right to reimbursement is superior to the right in virtue of the mortgage, or of the debt for which it was given. Such right, however, cannot have priority of a mortgage, or of a debt which may be made a charge, whereof the trustees had notice, if the trustees have allowed their *cestui que trust* to take and use the income that they might have applied to the full payment of their expenditures; and where income thus suffered to be used would not have been sufficient to reimburse the trustees, the trustees will be permitted to hold the lands until they shall have repaid themselves as much as their expenditures are in excess of the income which they might have applied to the payment of the same. Subject to this right, the lands will be sold to pay the amount charged upon them by the decree, and the surplus proceeds of sale will be invested, and the income will be paid to the trustees during the life of their *cestui que trust.*

On final hearing on pleadings and proofs.

*Mr. William T. Hilliard,* for the complainant.

*Mr. Martin P. Grey,* for William Newell and Elijah W. Dunn, trustees.

THE CHANCELLOR.

The object of the bill is to secure the payment of $1,000, with interest, out of the farm hereinafter mentioned.

By his will, dated on the 19th of June, 1859, James Newell devised to William Newell and Elijah W. Dunn his farm at

Lower Penn's Neck, in the county of Salem, containing about two hundred and forty-five acres, whereon his son, Charles B. Newell, then lived, with other lands, in trust, to rent the same from time to time, and pay to Charles B. Newell during his life the rents and profits thereof, and continued in these words:

"And at the death of said Charles B. Newell, I do give and devise all the said lands, houses and premises to his three children, Eliza Bradway, Charles Newell, Deborah Tuft, his children, to them, their heirs and assigns forever."

On April 29th, 1872, after the death of James Newell, and after his will had been duly admitted to probate, the son, Charles B. Newell, and his children, Charles W. B. Newell, Eliza A. Bradway and Deborah Tuft, who were all then of age, in order to enable them to rebuild embankments along the Delaware river, upon which a portion of the farm fronts, to protect the farm from inundation, borrowed $1,000 from John Hershon, executing and delivering to him their bond, conditioned for the payment of that sum in three years, with interest at seven per cent. per annum, and on the same day made and delivered to him their mortgage of the farm to secure the payment of that bond.

In February, 1875, Hershon assigned the mortgage to John Perrine. Perrine died in April, 1886, leaving a will, afterwards duly admitted to probate, of which the complainant is executrix.

At the time of the execution of the mortgage Charles W. B. Newell was married. His wife still lives and is a defendant to this suit. Eliza A. Bradway and Deborah Tuft were also at the time of making the mortgage married, and their husbands survive and are parties defendant in this suit. Neither the wife of Charles W. B. Newell nor the husbands of Eliza Bradway and Deborah Tuft joined in the execution of the bond and mortgage.

The bill alleges the purpose for which the mortgage was given, and that the embankments were constructed with the moneys had from it, and that such work was necessary for the preservation of the farm, and it asks dual relief, that the mortgage may be foreclosed, also that the money due upon it may be charged upon

the farm and paid thereout. Only the trustees, William Newell and Elijah W. Dunn, answer, and they claim that the complainant's right is subject to a lien upon the trust property which the law gives them for disbursements they have made in the performance of their trust, and allege that such disbursements amount to a large sum.

The first question to be considered is whether the children of Charles B. Newell, at the time the mortgage was made, had an estate in the farm which they could mortgage. It is observed that the will provides that the trust shall continue during the life of Charles B. Newell, adding, " and *at* the death of the said Charles B. Newell I do give and devise " &c.

In *Post* v. *Herbert's Executors, 12 C. E. Gr. 540,* John Herbert, by his will, devised lands to his executors to hold in trust for the use of his son-in-law, Abraham Post, in order that Post might enjoy the possession, rents and profits of the land until the youngest child of his wife should attain the age of twenty-one years, and " after the said youngest child " should attain the age of twenty-one years the land was to be sold and the proceeds of sale divided among the wife's children. Chief-Justice Beasley, pronouncing the opinion of the court of errors and appeals, stated the rule to be that a bequest to A. " at " a given age or marriage, or " when " or " from " and " after " his attaining a given age, is *prima facie* contingent, but that the rule is subject to exception, which, with the rule, are very distinctly stated and explained by Vice-Chancellor Wigram, in the case of *Peckham* v. *Gregory, 4 Hare 398,* in this language : " If there is a gift to a person at twenty-one, or on the happening of any event or a direction to pay and divide when a person attains twenty-one, there, the gift being to persons answering a particular description, if a party cannot bring himself within it he is not entitled to take the benefit of the gift. There is no gift in those cases, except in the direction to pay, or in the direction to pay and divide. But if upon the whole will it appears that the future gift is only postponed to let in some other interest, or, as the court has commonly expressed it, for the benefit of the estate, the same reason-

ing has never been applied to the case. The interest is vested notwithstanding, although the enjoyment is postponed."

Applying this rule to the case then considered the chief-justice said : "Now, in the present case it seems to me that the purpose of the testator in deferring the payment to the children of these legacies until the youngest should become of age is perfectly manifest. It was to keep the family together and provide a house for all the children until the period of distribution. I am at a loss to perceive any other motive for this provision. The payment most evidently was not postponed on account of anything personal to the legatees.   *   *   *   Without looking for the intention in other parts of the will, I think, from this clause alone, the purpose to postpone the payment of these legacies solely for the convenience of the estate, and to let in the interest deposited in the son-in-law, is unmistakably shown."

The conclusion drawn was in affirmance of the chancellor's opinion, reported in *11 C. E. Gr. 278*, that the children of the testator's daughter had taken vested interests at the testator's death.

The doctrine thus laid down has been adopted in several other cases in this state. *Fanly* v. *Klive, 2 Penn. 754; Wintermute* v. *Snyder, 2 Gr. Ch. 489; Howell* v. *Green, 2 Vr. 570; Van Dyke* v. *Vanderpool, 1 McCart. 198; Feit's Exr.* v. *Vanatta, 6 C. E. Gr. 84; Beatty's Admr.* v. *Montgomery's Exr., 6 C. E. Gr. 324; Van Blarcom* v. *Dager, 4 Stew. Eq. 783, 786; Ballantine* v. *Wood, 15 Stew. Eq. 552; Rhodes* v. *Shaw, 16 Stew. Eq. 430.*

In the case now considered, it is apparent that by deferring possession under the devise to the children, the testator's purpose was to let in a trust estate for the life of their father. The life estate was guarded by a trust designed to secure its continuous beneficial enjoyment by the testator's son, who would naturally care for his children. For some reason, undisclosed by the will, the testator deemed it unwise to bestow any legal estate upon his son, and yet it is plain that he designed for him and his children the benefits which would naturally flow from the fee—that is, the use of the land by the son for life in the maintenance of his family, and the remainder to the son's children. The assurance

of this course by the testator was a mere arrangement for the convenience or safety of the estate. No reason appears personal to the children of Charles why their interests should be postponed. I think that this case is clearly within the rule adopted in *Post* v. *Herbert's Executors*, and that the children of Charles B. Newell, at the death of their grandfather, took a vested remainder in fee in the farm, subject to the trust estate for the life of their father. This being so, they could mortgage their interest.

In the next place, it is too clearly established to need citation of authority that Charles B. Newell, as *cestui que trust*, could assign or mortgage his beneficial interest in his father's estate, subject, however, to such rights as the trustees may have in it.

The father and children, then, could give the mortgage in question.

But the wife of Charles W. B. Newell and the husbands of Eliza Bradway and Deborah Tuft did not join in the mortgage.

The effect of their failure to join must be considered.

It is clear that the wife of Charles W. B. Newell has an inchoate right of dower in the property, of which she cannot be divested for the payment of either the mortgage or the debt it represents.

The failure of the husbands of Eliza A. Bradway and Deborah Tuft to join in the mortgage renders that instrument void as to the wives, for it is established that the execution of such an instrument by a married woman without her husband is a nullity. *Den.* v. *Lawshe, 4 Zab. 613; Moore* v. *Rake, 2 Dutch. 574; Wilson* v. *Brown, 2 Beas. 277; Harrison* v. *Stewart, 3 C. E. Gr. 451; Armstrong* v. *Ross, 5 C. E. Gr. 109.*

This court will not give effect to it. *Phelps* v. *Morrison, 9 C. E. Gr. 195.*

The bond, however, is an acknowledgment of a debt due from the married women, which has been shown to have been given for the benefit of their property. In such case equity will hold their separate property liable to pay it. Although the mortgage is not valid as such, it will nevertheless operate in equity as an appointment of the property described in it for the payment of

·that debt, and equity will decree that the debt be a charge upon the property so appointed, and that the property shall be sold to pay it. The debt is not a lien upon their estate until made so by the decree of this court. The lien is in virtue of the decree of this court, not in virtue of the mortgage. *Pentz* v. *Simonson,* *2 Beas. 232; Wilson* v. *Brown, 2 Beas. 277; Harrison* v. *Stewart, 3 C. E. Gr. 451; Cutler* v. *Tuttle, 4 C. E. Gr. 549, 560; Armstrong* v. *Ross, 5 C. E. Gr. 109; Perkins* v. *Elliott, 7 C. E. Gr. 127; S. C. on appeal, 8 C. E. Gr. 526; Homœopathic Mutual Life Ins. Co.* v. *Marshall, 5 Stew. Eq. 103; 2 Story's Eq. Jur. § 1399.*

I think that William Newell and Elijah W. Dunn, as trustees, are entitled to be repaid their proper disbursements, at least so far as the interest of their *cestui que trust* is concerned, prior to the enforcement of the mortgage or the lien imposed by decree of this court in virtue of the debt of the married women.

They were called into action by the testator to execute his specified purpose concerning certain property. In order to the accomplishment of that which was required of them, they were clothed with legal title to the property, to hold primarily as security for the repayment of their proper expenses and disbursements. *2 Perry Trusts § 907; Drake* v. *Williamson, 4 Jur. (N. S.) 1009; Williams* v. *Allen, 32 Beav. 650; In re Bleckley, 35 Beav. 449.*

The mere fact that the mortgage debt was created to pay for that which the trustees might properly have paid in the protectino of the farm, does not give it priority over, or even equality with, the trustees' proper advances. To give it such priority or equality the trustees should have joined in it, or should have expressly agreed that it should have equality or priority. They paid interest upon it from the income of the farm, it is true, but for aught it appears to the contrary that payment was made at the request or with the consent of the life tenant. It has not been shown that the mortgagee, Hershon, dealt at all with the trustees when he placed his loan, or that he then expected priority over, or equality with, any right the trustees had acquired, or might acquire, in virtue of their position. He, seemingly, was

content with the security which the mortgage, made by the *cestui que trust* and remainderman, gave him.

What are the proper expenses and disbursements of the trustees in this case, as the proofs stand, is difficult to define. It may be stated generally that they must be limited to charges concerning matters within the scope of the trustees' authority. Accounts which the trustees have rendered to the orphans' court exhibit that they have themselves worked the farm. And, by those accounts, their proper disbursements appear to have been for taxes, insurance, repairs, seed, fertilizers, expenses of accounting, counsel fees and perhaps interest upon the mortgage and upon their advances, to which must be added reasonable allowance for their pains, trouble and risk as trustees.

All the expenditures thus enumerated were properly chargeable to the *cestui que trust* as life tenant, and, until the advances for them were paid, no part of the income should have gone to him. If, instead of satisfying those advances with the income they received, the trustees allowed the income, which would have paid them, to go to the *cestui que trust*, they did so at the peril of not being able to recoup, by withholding future income, for their right to do so exists only during the life of their *cestui que trust*. *2 Perry Trusts* § *543*. And, I may add, not during that life, as against the mortgage debt, of which they had notice before they allowed income to go to the *cestui que trust*, which is prejudiced by their failure to reimburse themselves from the moneys that they thus suffered to depart from their control. If, however, income thus suffered to be used was not sufficient to reimburse the trustees, equity will be subserved by permitting the trustees to hold the lands until they shall have repaid themselves so much of their expenditures as the income which they suffered their *cestui que trust* to use would not have paid, and by making sale of the farm, subject to that right in the trustees, and, after paying the amount decreed in favor of the complainant, investing the remainder of the proceeds of sale, that the income therefrom may be paid to the trustees during the life of their *cestui que trust*.

I do not mean to be understood, by that which I have said, to intimate that the trustees will not, under any circumstances, be permitted to hold the farm, beyond the life of their *cestui que trust*, for the purposes of reimbursement. On the contrary, I can conceive that necessary expenditure for permanent betterment of the farm may extend such right, or, indeed, that insufficient income to meet the proper expenses of the execution of the trust, either in the past or in the future, may extend it.

It must be referred to a master to take an account of the moneys chargeable to the trustees, and, as well, of the trustees' payments to their *cestui que trust* and their proper disbursements. Upon the accounting the master will take testimony and other proof explaining the particulars and purposes of the several disbursements, so that the court may be able to determine whether any part of them shall be charged upon the remainder after the particular estate expires.

The amount of the mortgage debt will be charged upon the farm, subject to the trustees' right as above defined and the inchoate right of dower of the wife of Charles W. B. Newell therein. Charles W. B. Newell will be foreclosed of his right to redeem the farm, and it will be directed that the farm be sold, subject to the rights aforesaid, to raise and pay the sum which shall be found to be due to the complainant. To ascertain that sum there must also be a reference to a master.