Ernest Otz died a resident of Hudson County in the year 1903 leaving a last will and testament which was duly probated. The testator's substituted trustees seek instructions under the following stipulation:
"It appearing that Henry G. Haas and Robert Perret, as Substituted Trustees of the Last Will and Testament of Ernest Otz, deceased, have filed a bill for instructions, and have also filed their final account as said Trustees, it is hereby stipulated by the undersigned as follows: *Page 242 
"1. That the issues to be settled in the construction of the Last Will and Testament of Ernest Otz, deceased, be determined by the Briefs of the parties filed herewith.
"2. That the facts upon which the issues are to be determined are as follows:
"(a) Ernest Otz died on or about October 31st, 1903, leaving a Last Will and Testament which was duly probated in the Surrogate's Office of Hudson County.
"(b) A trust was created by the said Will of Ernest Otz, deceased, the relevant provisions of which are as follows:
"`Fifth: I give and bequeath to Ida Sommer of Wollishofen near Zurich, Switzerland, being the daughter of my cousin Ida Sommer, the sum of Five Thousand Dollars ($5,000.00).
"`Sixth: I give and bequeath unto the children of my cousin Alexander Largin of the City of Bern, Switzerland, the sum of Five Thousand Dollars ($5,000.00).
"`Seventh: I give and bequeath unto the children of my cousin August Scheller of Kilchberg near Zurich, Switzerland, the sum of Five Thousand Dollars ($5,000.00).
"`Eighth: I give and bequeath unto the children of my cousin Ida Gattiker of Richterswyle, Switzerland, the sum of Five Thousand Dollars ($5,000.00).
"`Ninth: All the rest, residue and remainder of my property, whatsoever and wheresoever situate, I give, devise and bequeath unto my Executors hereinafter named in trust to convert the same into money and to invest, reinvest and keep invested such money in bonds secured by mortgages upon real estate, being a first lien upon the same or any other equally good and safe security and to pay the interest and income of and upon such investments unto my wife for and during the term of her natural life, and upon her death to pay the whole amount so invested to any child or children which I may leave in equal shares.
"`Tenth: If I shall leave no child or children me surviving, and my wife shall die having remained my widow, then I direct my Executors hereinafter named upon her death, to dispose of the whole of my estate and distribute the same in manner following to wit: I direct them to divide the sum of Fifty thousand Dollars ($50,000.00) among the children of my cousin Ida Sommer, those of my cousin Ida Gattiker, those of my cousin Alexander Largin, and those of my cousin August Scheller, in equal shares, per capita
and not per stirpes; and all the rest and residue of my estate remaining in the hands of my Executors after the payment and distribution of such Fifty thousand Dollars as aforesaid, I direct them to pay over unto the regularly constituted Cantonal authorities of the Canton Bern in the Republic of Switzerland, or to such other public body or authorities in said Canton as may have the charge of the aged poor and indigent persons residing therein (if the Cantonal authorities do not have such charge) for the purpose of founding and maintaining a Home for such aged *Page 243 
poor and indigent persons of both sexes as are deemed by such authorities to be worthy of admission into the same and I do hereby charge my Executors with the duty of seeing to the due and proper application of the money for the purpose intended.'
"(c) Ernest Otz died without leaving any child or children.
"(d) Ida M. Otz did not remarry.
"(e) Ida M. Otz died April 7th, 1942.
"(f) As of the date of the death of Ernest Otz, October 31st, 1903, the children of cousins, as mentioned in Paragraph Tenth of the said Will of Ernest Otz, deceased, were as follows:
"1. Children of cousin Ida Sommer, was (1) Ida Sommer.
"2. Children of cousin Ida Gattiker were (1) George Gattiker (2) August Gattiker (3) Adolph Gattiker (4) Paul Gattiker (5) Hans Gattiker (6) Emil Gattiker.
"3. Children of cousin Alexander Largin were (1) Johanna Arend (2) Marie Looser.
"4. Children of cousin August Scheller were (1) Ida Scheller (2) August Scheller (3) Emma Sophie Scheller.
"(g) As of the date of death of Ida M. Otz, April 7th, 1942, the children of cousins as mentioned in Paragraph Tenth of the Will of Ernest Otz, deceased, were as follows:
"1. Children of cousin Ida Sommer (1) Ida Sommer Lieberherr.
"2. Children of cousin Ida Gattiker were (1) August Gattiker (2) Adolph Gattiker (3) Paul Gattiker (4) Hans Gattiker (5) Emil William Gattiker. The said George Gattiker, one of the children of Ida Gattiker, who was alive at the date of the death of Ernest Otz, deceased, died on March 20th, 1907, without having married.
"3. Children of cousin Alexander Largin were (1) Johanna Arend (also now known as Jeanne Arnd). The said Johanna Arend died intestate on December 18th, 1946, leaving as her sole heirs-at-law, four children, Walter Karl Arnd, Wilhelm Alexander Arnd, Helene Elizabeth Schwenter and Johanna Charlotte Rauber, all of full age. The said Marie Looser, who was alive at the date of death of Ernest Otz, died subsequently on November 9th, 1938, without any issue her surviving. *Page 244 
"4. Children of cousin August Scheller were (1) Ida Scheller (2) August Scheller. Emma Sophie Scheller, who was alive at the date of death of Ernest Otz, died subsequently on March 11th, 1932, leaving her surviving two children, Annemarie Ida Probst and Lisa Probst, both of full age.
"(h) The trust estate originally amounted to approximately $425,000.00
"(i) The value of the trust has depreciated and the Trustees now have on hand a balance of
 Cash and United States indebtedness .............. $197,960.60
 Bond and Mortgage obligations .................... 6,500.00
 ___________
 Total ....................................... $204,460.60

"After deducting from the balance on hand the sum of $50,000 for the children of cousins, and the amount of commissions and counsel fees calculated to be $15,300.00, there will remain a sum of $139,160.60 for the benefit of the trust under Paragraph Tenth of the Will to establish a home for the poor of the Canton of Bern.
 "Dated: June 12, 1947. (Signed)
 HENRY J. GAEDE Henry J. Gaede Solicitor for Complainants, Henry G. Haas and Robert Perret, as Substituted Trustees.
 DUDLEY A. SCHLOSSER Dudley A. Schlosser, Solicitor of defendants Annemarie Ida Probst Moeschinger and Lisa Probst Maeg.
 WILLIAM A. SCHLOSSER William A. Schlosser, Solicitor of defendants Ida Sommer Lieberherr, et als.
 FRED GYGAX Fred Gygax Consul General of Switzerland." *Page 245 
The bequests under paragraph fifth, sixth, seventh and eighth of the testator's will have been paid to the children as specified. Some of the children of cousins to whom were paid the general legacies have died since the date of the death of Ernest Otz in 1903, and before the death of Ida M. Otz in 1942. No children of cousins, as mentioned in paragraph ninth have been born since the death of Ernest Otz.
One of the questions to be decided by this court is whether or not Emma Scheller Probst had a vested estate in the $50,000 fund or legacy at her death in 1932, and further, do her children take their mother's share? The rule in our state is that legacies are construed to be vested and not contingent unless such a construction would be clearly inconsistent with the testator's intention. Van Dyke's Adm'r v. Vanderpool's Adm'r, 14 N.J. Eq. 198.
Where a contingent legacy is left to a legatee who dies before the contingency is met, then the legacy lapses. The courts consider a contingent legacy as one requiring the condition to be fulfilled before the legacy vests. However, a distinction is made between mere postponement of the time of payment and a requirement that a condition be met before a legacy vests. A legacy to be paid when the condition is met is a vested legacy as of the death of the testator.
In the instant case the conditions attaching to the $50,000 legacy were that the life beneficiary die and that there be no children surviving the testator. Salem National Bank and TrustCo. v. Elkinton, 139 N.J. Eq. 429; 51 Atl. Rep. 2d 889.
The children of the testator would have to be in being orenceinte at the death of the testator, from which it follows that the legacy of $50,000 aforesaid vested as of the death of the testator, although not payable until the death of the life beneficiary.
Clearly it was the intention of the testator to have all of the children of the named cousins share in the legacy. The word "children" is interpreted by our courts to include grandchildren.Brokaw v. Peterson, 15 N.J. Eq. 194; Dunn v. Cory, 56 N.J. Eq. 507; 39 Atl. Rep. 368; Farmers' Trust Co. v. Borden,83 N.J. Eq. 222; 89 Atl. Rep. 985.
A case in point is Fidelity Union Trust Co. v. Bond, 102 *Page 246 N.J. Eq. 494; 141 Atl. Rep. 574. The testator in that case after giving annuities to a sister and granddaughter, gave the residuary of his estate to the executors in trust, the income therefrom to go to his wife for life. At the death of the wife annuities were to go to two grandchildren and if they died without lawful issue then the residue of the estate was to go to the children of named sisters and brothers. The court held that the gift vested in the nieces and nephews as of the death of the testator, and that the enjoyment of the gift was postponed pending the use of the income by the life beneficiaries. SeeKeen v. Plume, 82 N.J. Eq. 526; 90 Atl. Rep. 1027; In reCollins, 99 N.J. Eq. 333; 133 Atl. Rep. 188.
Equity regards a gift to a trustee as a gift to the legatee, and as the fund vested in the trustee at the death of the testator, it therefore vested in the legatee.
Our courts take the attitude that where there are no words of bequest except the direction to pay or distribute in the future, yet if such payment appears to be postponed for the convenience of the fund, the gift will vest at once. Van Dyke's Adm'r v.Vanderpool's Adm'r supra; Perrine v. Newell, 49 N.J. Eq. 57;23 Atl. Rep. 492.
The testator planned that his estate was to be kept intact for the benefit of his wife and possible children, and that purpose having been served, $50,000 of the principal was to go to the children of named cousins, and the rest of the estate to the Canton of Bern, Switzerland, for charitable purposes. His aim in postponing payment was to give the life beneficiary the benefit of the interest in the $50,000 out of which the legacy was to be paid. Fairly v. Kline, 3 N.J. Law 322; Herbert's Ex'rs v.Post, 26 N.J. Eq. 278; In re Collins' Estate, supra.
Since Emma Scheller Probst, as a child of one of the named cousins, had a vested interest in the $50,000 legacy at the date of the testator's death, she having died in 1932, it follows that her children, Annemarie Ida Moeschinger, nee Probst, and Lisa Maeg, nee Probst, are entitled to their mother's share of the legacy. See Ex'rs of Wintermute v. Ex'rs of Snyder, 3 N.J. Eq. 489. *Page 247 
In Ricardo v. Kelly, 136 N.J. Eq. 365; 41 Atl. Rep. 2d901, it was said: "It is a familiar rule that a devise of a remainder limited upon a particular precedent estate, determinable on an event which must necessarily happen, will be construed as vesting the remainder estate at the time of the death of the testatrix. Commonwealth-Merchants Trust Co. v.Seglie, 127 N.J. Eq. 160; 12 Atl. Rep. 2d 153."
It is to be observed that the rule of "pay and divide" in this state is a rule of construction, and when a given case fails to come within the exceptions to the rule, our courts declare the bequest vested as of the death of the testator if from the will as a whole his intention to give an immediate vested interest can be gathered. That rule applies when there are no words of bequest except the direction to pay or distribute in the future. The instant case comes within the exception to the rule.
The testator's will directs in plain language that the residuary estate is to be paid over for the purpose of founding and maintaining a home for the aged poor of the Canton of Bern. The Canton of Bern has passed a resolution accepting the legacy, a copy of which is translated as follows:
"DECREE OF THE GOVERNMENT COUNCIL OF THE CANTON OF BERN REGARDING ESTATE OF ERNEST OTZ, NEW YORK.
The Government Council determines:
The State of Bern was appointed Legatee to take the Estate after payment of debts and certain other legacies according to the Will of Ernest Otz, deceased, dated June 6, 1898. Mrs. Ida M. Otz, widow of the deceased, who according to that Will was entitled to the income, died on April 7, 1942, so that the State of Bern is now entitled to receive the Estate. The above mentioned Will provided that the Legacy shall be used by the lawful authorities of the State of Bern for the purpose of founding and maintaining a home for the poor and needy old people of either sex, which have been found to be worthy of admission by such authorities. The Government Council, as administrator of the care of the poor for the State and as supervisory authority of the care of the poor by the communities and the citizens' corporations, is competent to ask for such a legacy and to receive the same.
In view of the above it is decided:
(1) Dr. Victor Nef, Consul General of Switzerland in New York, and Robert Perret, Counsellor-at-Law, both of New York, who have been appointed the Representatives of the State of Bern by Power *Page 248 
of Attorney of the Government Council, dated June 12, 1942, are directed to receive the legacy in question and to transmit it to the Finance Office of the Canton of Bern for the State of Bern.
(2) The amounts in question are to be used in accordance with Paragraph 10 of the above-named Will.
(3) The amounts are to be deposited in a Special Account.
Bern, January 12, 1943.
 FOR THE GOVERNMENT COUNCIL Vice President.
The Power of Attorney which forms the subject matter of the above mentioned decree is of unlimited duration so that it remains in full force today. Secretary of State For the Chancery of the State Schneider. (Signed) Schneider Chancellor. Chancery of Bern. October 25, 1945."
In order that his intentions would be carried out the testator says specifically, "and I do hereby charge my Executors with the duty of seeing to the due and proper application of the money for the purpose intended." He indicated that the money should be used for "founding" a home. It is apparent that he had in mind the creation of something new that would be firmly fixed. He declares that the money should be used, after the home had been established, to maintain the home. In that situation the trustees of the estate of the testator should not pay over to the Canton of Bern until that body has indicated some plan or enterprise of founding a home.
I feel that a reasonable amount of the trust funds should be reserved to continue the existence of the home. Merely paying the trust fund to the Canton of Bern, a political entity, may not accomplish the purpose of the testator. Evidently the testator had that situation in mind, and to make certain his intention would not fail, he charged his executors or trustees with the duty of seeing to the due and proper application of the moneys for the purposes intended and stated by the testator. *Page 249