### JOHN LIVESEY

*v.*

### SAMUEL B. JONES, sole surviving executor &c. of Henry Livesey, deceased, et al.

A bequest of the residue of testator's estate to " humanity's friend, * *. * B., to use and expend the same for the promotion of the religious, moral and social welfare of the people in any locality, whenever and wherever he may think most needful and necessary," since it includes objects not charitable, must fail for indefiniteness.

On bill.

For the complainant, *Mr. Samuel A. Besson.*

For the heirs, *Mr. Abel I. Smith.*

For Dr. Chadwick, *Mr. Isaac S. Taylor* and *Mr. Cowen.*

STEVENS, V. C.

I think the trust under consideration in this case must fail, because it includes objects not charitable, and is therefore so general and indefinite that the court cannot see to its execution. The testator gives the residue of his estate to his friend and humanity's friend, the Rev. H. W. B.,

"to use and expend the same for the promotion of the religious, moral and social welfare of the people in any locality, whenever and wherever he may think most needful and necessary."

Now, in the first place, it seems to be plain that the words "religious, moral and social" are not used conjunctively in such manner that *every* object to which the bequest may be applied *must* conduce at one and the same time to the advancement of religion and morality and to the social welfare of the people. To so hold would be to make the charity a religious one, contrary to the plain intention of the testator. It would be, moreover, in direct conflict with the decision in *Williams* v. *Kershaw, 5 Cl. & F. 111*, where the devise was to "such benevolent, charitable *and* religious purposes as the executors should in their discretion think most advantageous and beneficial," and where it was held that this language authorized the application of the bequest to other than strictly charitable purposes. This case I regard as authoritative, because Chief-Justice Beasley, in *Norris* v. *Thomson, 5 C. E. Gr. 523*, said that it rested on a proper foundation, and reiterated his opinion in *DeCamp* v. *Dobbins, 4 Stew. Eq. 695*, in the following vigorous language: "Nor can I go with that process of reasoning that concludes that when the word 'benevolent' is conjoined to the word 'charitable,' the two words become identical in meaning, as that implies that one of the terms is to be dispensed with or that the lesser term swallows up the larger.   *   *   *   In such a naked case as I have supposed, for the court to strike out the broader of the descriptive terms may indeed uphold, now and then, a testamentary limitation, but at the same time, one of the most important canons that the law has established for the construction of written instruments is impaired."

I must therefore assume that any use of the property which, in the estimation of Dr. Bellows, would promote either the religious welfare of the people, or the moral welfare of the people, or the social welfare of the people, would be fully justified by the language of the will.

That a trust to promote the religious welfare of the people is charitable is admitted. Whether a trust to promote their moral

welfare is so, I need not consider. I am clear that the trust to promote the social welfare of the people, in the manner declared in this will, is not. I think it may be said, without much fear of contradiction, that there are many ways of advancing the social welfare of the people which have nothing to do with charity. Money given to companies to build railways or canals, water or gas-works, where none exist; money given to companies or individuals to build steamship lines or otherwise to advance commerce or agriculture, would be money given to promote the social welfare of the people, certainly quite as much as money given to hospitals and almshouses, but would not be given for charitable purposes.

*Kendall* v. *Granger, 5 Beav. 300,* is a case directly in point. The gift there was "for the relief of domestic distress, assisting indigent but deserving individuals *or encouraging undertakings of general utility,*" and of this gift Lord Langdale said that if the sentence had ended with "individuals," it would have been a good charitable purpose, but he felt himself bound by the decisions to hold that the words "general utility" were large enough to include purposes which were not charitable and the bequest was therefore void.

In *Nightingale* v. *Goulburn, 5 Hare 489,* the bequest was to "the queen's chancellor of the exchequer for the time being, to be by him appropriated to the benefit and advantage of my beloved country, Great Britain," and it was held to be a valid charitable bequest. This testamentary disposition stands in strong contrast to that under consideration. Had Mr. Livesey given the residue of his estate to the people of New Jersey for public purposes, it would, on the authority of the case just cited, have been good. It would have fallen within that part of Mr. Justice Gray's definition of charity—a definition which is no more than a generalization of the instances contained in the statute of *43 Eliz.*—in which he says: "A charity, in a legal sense, may be defined as a gift to be applied consistently with existing laws for the benefit of an indefinite number of persons * * * by erecting or maintaining public buildings or works or otherwise lessening the burdens of government." In the

case in hand, however, there is no intention to confine the gift to the people of the state, regarded either as a sovereign entity or as individuals.   The donee is "humanity's friend," the Rev. Dr. Bellows.   His place of residence is stated to be New York. The gift is to the people—that is, presumably, the people who go to make up humanity.   The gift is to be expended in *any* locality whenever and wherever he—that is, "humanity's friend"—may think most needful and necessary.   To restrict such a gift to the limits of the State of New Jersey, for the public purposes of the state, would be an utter perversion of the testator's expressed purpose.

In *Owens* v. *Missionary Society, 4 Kern. 409*, Chief-Justice Denio said, in relation to a gift to a society whose object was "to diffuse more generally the blessings of education, civilization and Christianity throughout the United States and elsewhere," "the advancement of civilization, generally, is not classed among charities in the statute [*Eliz.*], and I have not been able to find an adjudged case in which it has been held to fall within the legal notion of charity."

Mr. Perry, in his work on *Trusts* § *710*, gives many instances of bequests held to be not charitable, among them a bequest creating a trust for the political restoration of the Jews; to secure the passage of laws granting women the right to vote and hold office; to establish a school which was not a free school. I do not see why any one of these objects would not come within the fair meaning of the words of the bequest we are considering. The trust here attempted to be created must therefore fail because too general and indefinite, and by the course of decision in this state, it must fail altogether.

Counsel also raised the question whether the trust did not fail by reason of the fact that Dr. Bellows died after the testator but before the life tenant.   The contention is that the trust was so personal to Dr. Bellows that the court would not appoint any other person of its own selection to execute it.   As I find that the trust has failed altogether, it is unnecessary to consider this question.