JOSEPH M. W. KITCHEN, appellant,

*v.*

JOHN O. H. PITNEY et al., respondents.

[Decided February 1st, 1923.]

On appeals from a decree of the court of chancery advised by Vice-Chancellor Fielder, who filed the following opinion:

"Marcus L. Ward died May 27th, 1920, leaving a will which was admitted to probate June 2d, 1920, by the surrogate of Essex county. By the twenty-fifth clause he gave, devised and bequeathed all the residue of his estate to his executors and trustees, in trust for the following purpose:

" 'They are to use such rest, residue and remainder of my estate for the purpose of establishing and maintaining, as hereinafter directed, a home for aged and respectable white bachelors and widowers, who may have, through misfortune, lost the means which they once had for their own support, and have become wholly or partially unable to support themselves, * * * and in order that such desire on my part may be in all respects fulfilled, it is my will that my said executors and trustees, with the advice and aid of counsel learned in the law, shall cause and procure a corporation to be formed under the then laws of the State of New Jersey, to be called the "Marcus L. Ward Home for Aged and Respectable Bachelors and Widowers," with all such powers and privileges as may be authorized by the laws of the State of New Jersey. It is my will that my said executors and trustees, or one of them, shall be included in the list of incorporators, organizers or members for such proposed corporation, and that the other incorporators, organizers or members shall be selected by my said executors and trustees from men of high character and standing, resident in the State of New Jersey. The main object of such proposed corporation shall be to provide for the proper and suitable maintenance and support of such respectable and aged white bachelors and widowers, not less than sixty years of age, and *bona fide* residents of New Jersey for ten years preceding admission, as may have, through misfortune, lost the means which they once had for their own support and become wholly or partially unable to maintain themselves, and as may be admitted to

said home under the charter and by-laws and under the rules and regulations which may be made for the government of said home by said corporation when formed; applicants for admission to said home must satisfy the management of said corporation, that they have been *bona fide* residents of the State of New Jersey for at least ten years prior to application for admission thereto, and that they are at least sixty years of age; and no bachelor or widower shall have the right to admission to such home, or to remain after admission, except with the sanction and approval of such corporation, in accordance with its charter and by-laws and the rules and regulations prescribed for the government of said home; and the charter or certificate of incorporation of such corporation shall be so drawn as to provide for such object and the limitations aforesaid and to secure so far as possible the realization of my wishes as expressed in this my last will and testament.

" 'It is my will that such corporation shall purchase with a part of such rest, residue and remainder of my estate, lands of sufficient quantity, at such place in the State of New Jersey, as the directors or trustees of said corporation may select, and shall erect thereon proper and suitable building or buildings, and furnish and equip the same, for the comfort of such aged and respectible bachelors and widowers, as may be admitted to the privileges of said home; and if thereafter needed, said corporation may erect from time to time, additional building or buildings, and furnish and equip the same, for the use of said home, using for such purpose such further part of the rest, residue and remainder of my estate, or any accrued income thereon, as the directors or trustees of said corporation may deem expedient. After the purchase of said lands and the erection, furnishing and equipment of the building or buildings to be erected thereon, and subject to the erection, furnishing and equipment of other building or buildings as from time to time needed, the income of the balance of said rest, residue and remainder of my estate is to be used by said corporation for the proper support and maintenance (inclusive of necessary repairs to buildings, and refurnishing) of said "Marcus L. Ward Home for Aged and Respectable Bachelors and Widowers." '
\*    \*    \*

" 'Upon the formation and incorporation, such corporation to be called the "Marcus L. Ward Home for Aged and Respectable Bachelors and Widowers," in compliance with the then laws of the State of New Jersey, my said executors and trustees are required and directed to transfer and deliver to such corporation, its successors and assigns forever, by legal and proper conveyances, and other necessary instruments in writing, sufficient in the law for that purpose, all of the rest, residue and remainder of my estate.'

"This suit is instituted by complainant as an heir-at-law and next of kin of the testator, on behalf of himself and all others interested, to have it declared that the trust is illegal

and void, and that the executors and trustees under the will hold title to the residuary estate for the benefit of complainant and all other persons who, as heirs-at-law and next of kin of the testator, are entitled to the same.

"1. The contestants contend that one who is partially able to support himself is not, in a legal sense, an object of charity, and that, because the trust under consideration is for the benefit of bachelors and widowers who are partially, as well as wholly, unable to support themselves, the trust is not exclusively for charitable uses, and it must therefore fail. If the fund, in the discretion of the trustees under the will, or of the board of trustees who are to manage the home under its incorporation, can be used for purposes not strictly charitable, or partly for purposes charitable and partly for purposes not strictly charitable, the trust created is invalid. *Norris* v. *Thomson's Executors, 19 N. J. Eq. 307; affirmed, 20 N. J. Eq. 489; Hyde's Executors* v. *Hyde, 64 N. J. Eq. 6; 53 Atl. Rep. 593; Hegeman's Executors* v. *Roome, 70 N. J. Eq. 562; 62 Atl. Rep. 392; Van Syckel* v. *Johnson, 80 N. J. Eq. 117; 70 Atl. Rep. 657; Thomas* v. *Scheible, 91 N. J. Eq. 451; 111 Atl. Rep. 519.*

"2. It is conceded that a trust in perpetuity intended for the relief of the poor, the sick, the homeless, the aged, or other persons in similar unfortunate circumstances, is valid as for a charitable use. The class of men whom this testator desired to help are bachelors and widowers of advanced age and in unfortunate circumstances in life—that is, those men who having lost their means of support through misfortune, are at the age of sixty years or upwards, partially, if not wholly, unable to support themselves. It is not necessary to the validity of the trust that the testator's charitable intent should be confined to those so absolutely destitute that the almshouse is their only public place of refuge. If a man is partially unable to support himself, he must have need of some assistance. Men who are partially unable to support themselves may be objects of charity, as well as those who are wholly destitute and entirely dependent upon others, the difference between them being but of degree, as is the differ-

ence between the poor and the very poor; the sick and the hopelessly incurable; the weak-minded and the insane. In *Goodell* v. *Union Ass'n, 29 N. J. Eq. 32,* the trust was to alleviate the wants and suffering of the deserving poor of the town of Mount Holly; in *Hesketh* v. *Murphy, 36 N. J. Eq. 304,* it was for the benefit of the most deserving poor of the city of Paterson, and in *Hilliard* v. *Parker, 76 N. J. Eq. 447; 74 Atl. Rep. 477,* it was for the purchase of fuel for the most needy women of the borough of Woodstown. The trusts in these cases were upheld, and the cases recognize that there are degrees of poverty and individual necessity. Suppose that this testator had created his trust specifically for the benefit of poor bachelors and widowers, would it not be necessary for those charged with the supervision of admission to the home to ascertain whether each applicant is actually poor—that is, so poor as to be unable to support himself—and, should it be found in any case that an applicant is possessed of some means of support, should the applicant for that reason be rejected, or would it not have to be determined whether such means of support are so insufficient as to render him dependent, and therefore entitled to the aid of the home? So, in this case, I apprehend that it is the duty of the trustees under the will, or of the trustees of the home, to determine whether the partial means of support which any applicant may have is sufficient for his needs, or so insufficient as to make him an object of charity. This testator has provided for admission to a home he proposed to establish of a class of men possessing qualifications which he described, and he said that they are therein to be provided with 'proper and suitable maintenance and support,' which means such support and maintenance as may reasonably be considered as suitable and sufficient for men who are unable to fully support themselves, and so far as the fund which he made available for the purpose will permit. I am unable to see that by anything the testator said in his will he gave to his trustee, or to the board of trustees of the home, discretion to admit to the home bachelors and widowers who are

able to support themselves, and to house and maintain such persons in the home in luxury and idleness.

"3. The contestants also contend that the will is too vague, uncertain and indefinite as to the class of persons intended to be benefited. The testator said that to obtain admission to the home an applicant must be a respectable white bachelor or widower, at least sixty years of age and a resident of this state at least ten years prior to admission, who, through misfortune, has lost the means he once had for his support, and has become wholly or partially unable to support or maintain himself. If from this description of the men who he desired should be the object of his bounty his intent can be ascertained so that his trustees may employ the trust according to such intent with reasonable certainty, it is sufficient. The general principle is that courts of equity uphold gifts to a charitable purpose if there is a trustee with power to designate the particular persons to be benefited thereby. *DeCamp* v. *Dobbins, 29 N. J. Eq. 36; affirmed, 31 N. J. Eq. 671; Hesketh* v. *Murphy, supra; Hyde's Executors* v. *Hyde, supra; King* v. *Rockwell (N. J. Ch.), 93 N. J. Eq. 46.*

"4. In support of their argument that the class to be benefited is indefinite, the contestants point to the provision that an applicant for admission to the home must have lost by misfortune the means he once had for support, and they contend that there is no guide by which the trustees under the will, or the board of trustees of the home, can determine what the testator meant by the words 'misfortune' and 'means.' It is argued that the word 'misfortune' may have as broad a meaning as the word 'mischance,' and could therefore be said to include any event or occurrence which might deprive one of his property or effects, and so include a loss through gambling, card playing, betting on horses, idleness, shiftlessness, neglect of businsess or drunkenness. It might be said that men who are 'down and out' as a result of bad habits or their own carlessness or neglect are, nevertheless, objects of charity; but the testator did not provide for ad-

mission to the home of those who had lost their means of support through any event; he placed a limitation thereon, and described it as a 'misfortune,' and he said that applicants must be 'respectable,' both of which words as used by the testator would exclude the dissolute, the idle and the shiftless. I can see no room for doubt in ascertaining the meaning of the word 'means,' because I can find nothing in the will from which it can be inferred that this word should be limited in its interpretation to include only financial faculties, such as money or capital. It is broad enough to include also physical means of support, such as health, mind or other physical faculty; and it seems to me that the word 'means' was used for the purpose of showing the testator's intent to exclude all persons possessed of ability, either financial or physical, of supporting or maintaining themselves.

"5. The contestants further urge that the trust is too narrow, in that it is confined by its limitations to but a small number of men. It is difficult to approximate the number of men who might qualify for admission to the home; but, among New Jersey's population of over three million, I would say that many men could meet the requirements of the will. That this contention is without foundation is shown by the decisions in *Goodwell* v. *Union Ass'n, supra; Hesketh* v. *Murphy, supra;* ,*Trustees* v. *Wilkinson, 36 N. J. Eq. 141; affirmed, 38 N. J. Eq. 514;* and *Hilliard* v. *Parker, supra,* where the benefits of the respective trusts were limited to a comparatively few persons, but were, neverthless, held good.

"6. The next objection made by the contestants is that, because the executors and trustees are directed to incorporate a home and place its conduct and control in a board of trustees who shall have power to make rules and regulations for the admission and government of inmates, the board of trustees may exclude the real poor, needy and deserving, and admit only those having qualifications of education, religion, social standing, and limited money income or principal, and, in case such regulations should be adopted, the trust would

not be administered for charitable purposes; that, having obtained admission to the home, no inmate can remain except with the sanction and approval of the board of trustees, but may be removed therefrom under such rules and regulations as the board of trustees may choose to adopt. I can see no merit in this objection. The testator is explicit in defining the qualifications for admission to the home, and he said nothing with reference to qualifications of education, religion or social standing. The will provides that the charter or certificate of incorporation of the corporation which is to receive the trust fund shall conform to the object expressed in the will, and shall secure, so far as possible, the realization of the testator's wishes; hence the organization of the home and its management must conform to the will and the certificate of incorporation. The corporation has actually been formed and is prepared to accept and administer the trust, and no criticism has been made by the contestants of the objects of incorporation as set out in the charter. Such rules and regulations as may be adopted by the board of trustees for the government of the home must be consistent and in harmony with the purposes set out in the will and the certificate of incorporation, and it cannot be assumed that the board of trustees, by the adoption of rules and regulations, or in the conduct of the home, will do otherwise than carry out the intention of the testator as expressed in his will.

"7. The final objection raised by contestants is that the trust is against public policy because it provides for a fund exceeding $4,000,000 to be held in perpetuity, the benefits of which can be enjoyed by a limited number of men only, who, if now partially able to support themselves, do not need the assistance of the fund, and, if wholly unable to support themselves, may be supported by members of their own families, or by institutions, public or private, already established to meet their cases. No legal authority in support of this objection is cited, and I do not find it well taken. The fund in question is large, but a part of it must be used for the purchase of land and the erection of buildings, and a con-

siderable sum must be reserved for investment to provide the income necessary for maintenance. The applicants for the benefits from the fund may be numerous, and the establishment of the home should, in the course of time, ameliorate and relieve the needs of and provide comforts in their declining years for hundreds of deserving residents of this state. The establishment of such a home is in the interest of the public, and a charity such as the testator evidently intended this to be is favored by our courts. *DeCamp* v. *Dobbins, supra; Hesketh* v. *Murphy, supra; Johnson* v. *Bowen, 85 N. J. Eq. 76; 95 Atl. Rep. 370.*

*Messrs. Howe & Davis,* for the appellant.

*Messrs. McCarter & English,* for the respondents.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Fielder.

*For affirmance* — THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK—14.

*For reversal*—None.