William McCully, late of the city of Camden, died August 7th, 1933, leaving a will dated July 15th, 1931, probated by the surrogate of Camden county on August 18th, 1933. The bill filed herein involves the construction of this will.
By the will, after providing for the payment of debts and certain legacies mentioned in the first five paragraphs, testator provided in the sixth paragraph as follows: *Page 62 
"Sixth: All of the rest, residue and remainder of my estate of whatsoever kind and wheresoever situate, I give, devise and bequeath my trustees hereinafter named in trust for the following purposes."
And then proceeds to direct the investment of a sufficient portion thereof to pay certain annuities to Henry L. Lippincott, Addie C. Lippincott, Ralph Lippincott, Paul Lippincott, James Lippincott and Helen C. Heinemann, and as each of these annuitants should die, the annuity should revert to and become a portion of the residuary estate.
The testator further provided by paragraph 6-h:
"6h. I direct that my heirs, except as expressly provided for herein, shall not take under this will nor by or under any law, it being my intention to expressly eliminate them from any interest or share in my estate, except as expressly named herein."
By the seventh paragraph of the will he provided as follows:
"Seventh: a. I direct that my trustees shall invest and reinvest the remaining portion of the residue of my estate with all of the additions thereto and the issues and the profits thereof and accumulations on the same for a period of not more than twenty years after the date of my death. At the end of such period, or sooner, if in the judgment of my trustees, there shall be funds sufficient for the purpose, the trustee shall acquire a tract of land (for which I think fifty acres would be suitable, but which I leave to my trustee's entire discretion), in a rural section of Camden County and shall erect thereon buildings sufficient to constitute a home and school for white, male children, to be known as the `William McCully Home and School for Orphan Boys,' and after the erection thereof, shall establish the said home and school and shall thereafter maintain and operate the same as a charity. It is my desire that said home and school should be large enough to accommodate at least fifty children, but if there shall be insufficient funds for that purpose, then I direct that said home and school shall be as large as the funds therefor will construct and maintain. It will not be necessary for my trustees to wait for the period mentioned, but if the funds will justify, said land may be purchased and the said home and school be erected at such time or times as said trustees shall see fit.
"b. I direct that before my trustees shall cause said buildings to be erected, and said home and school to be constructed, there shall not only be in their hands sufficient funds to provide therefor in the manner herein set forth, but a surplus of principal, which will be available for accumulation for the enlargement of the school and the maintenance thereof as hereinafter set forth, and also for unforseen *Page 63 
emergencies. This provision shall be governed by the provisions of `e' following:
"c. My trustees shall prescribe rules and regulations under which boys shall be admitted to said school and home, but I direct that they shall select children with Christian antecedents and that preference be given to children of native born parents. No boys shall be admitted who are younger than two years of age, nor when either parent is living. My trustees may require as a condition to admission to said home and school that such legal proceedings be taken as will enable said home to retain the custody and control of the children admitted, notwithstanding relatives may desire them to be removed from the home my purpose being that upon once being admitted the child admitted shall remain in the home for the purpose of care, education and training until he arrives at the age of seventeen years.
"d. It is my desire that the children in such home shall receive such an education as will best fit them for a useful occupation or calling in life and as will enable them to become useful members of society and to the end that they may be properly grounded in religious doctrine, I direct that they shall receive instruction in the principles taught by the Methodist Episcopal Church. Children, upon leaving the said school, shall receive a suitable supply of clothing and it shall be the endeavour of the authorities of the home to see that such outgoing youths are put in the way of employment, further schooling, or otherwise started out in life.
"e. I direct that my trustees shall so operate the trust in their hands that there shall be funds remaining in the principal of said trust (having annual return), after the establishment of the said home and school and the care and maintenance thereof, which remaining funds and the interest accruing thereon are to be accumulated for so long a period as may be permitted by law, and from time to time, used for emergencies and for the purpose of enlarging the size of the said home and school to the end that more children may be cared for and educated therein. Such excess shall, so far as possible, always be accumulated for so long a period as may be permitted by law, for this purpose and while I am not limiting my trustees to the expenditure of any fixed proportion of the principal or income for the said home, I direct that so far as possible there shall be periodically set apart from the income of the trust for the establishment of the home and school and the payment for the care and maintenance thereof from fifteen to twenty per cent. of the recurring income which percentage shall, no matter how large the school shall grow, be used for the purpose of future expansion. I make this provision, having in mind possible increase in expenses of operating such an institution as well as prospective increase in population in the community wherein the same home shall be established.
"f. If the provision herein made providing for the accumulation of moneys for the purposes aforesaid shall be construed or held to be in contravention of any statute or any rule of law, whether said statute or rule of law be a rule against perpetuities or against accumulations or against restraint on alienations, or be of some other nature, then I direct that the provisions for accumulation shall be *Page 64 
disregarded and that the said trust shall be so executed as to come within such statute or rule of law; that such invalid provision or provisions shall be regarded as surplusage, the trust to be performed within the limits of said rule by the trustee.
"g. My trustees shall have full power, authority and discretion as to the selection and employment of officers, teachers and all other employes necessary for the operation of said school and as to the nature and character of the buildings and of the subject taught.
"h. My trustees may, in their discretion, cause an eleemosynary corporation to be formed for the purpose of carrying out the terms of this trust and may vest the title and management of all funds and assets of such trust in such corporation. The directors, or other governing body, or trustees of such corporation shall be at all times identical with the trustees of the trust created hereby and said corporation shall be subject to full right of visitation upon the part of each trustee and of the Board of Appointment to the office of trustee hereunder, hereinafter referred to, which right of visitation shall exist in each trustee and in said Board of Appointment and in each member thereof.
"i. In the event of the death or removal of any trustee or in the event that any trustee becomes incompetent to act, a successor or successors to such trustee or trustees shall be appointed by a board consisting of the judge or judges for the time being holding court and regularly assigned or on duty in Camden County, New Jersey, in the Supreme Court, Court of Chancery, Orphans Court, Common Pleas Court, or any court or courts succeeding to the jurisdiction of the courts named and also of at least two of the trustees then in office, such two of the total number of trustees to be selected by the trustees then in office, all of such persons to constitute such Board of Appointment.
"j. I direct that my trustees, so far as any services by them in respect to the management and operation of said home and school are concerned, shall serve without compensation, and that, if such trustees are not willing to serve on that basis, they shall be ineligible to serve as such trustee. I recognize, however, that it will be necessary that some payment shall be made for the administration of the estate and as to any services required in that regard I wish proper payment made. My purpose in this respect is to secure the services as trustees of persons who are actuated by a desire to carry out, without remuneration to themselves, the purpose of the said trust, which I regard as of primary importance.
"k. I may, at the time of my death, have already acquired a tract of land suitable for the said school, in which event my trustees may retain the same for that purpose, if they so desire.
"l. I am the owner at this time of a burial lot in Harleigh Cemetery and I direct that if my trustees shall deem it advisable they may use the said lot for burial of such children as may die in the home, or may sell or dispose of the same or such part, as they see fit, and I do direct that in the case of such children as may die inmates of said home they shall in any event receive, at the expense of this trust, proper Christian burial." *Page 65 
The tenth paragraph of the will provides:
"Tenth: I hereby constitute and appoint as executor of this will, the Third National Bank Trust Company of Camden, New Jersey, and as trustees of this trust I do appoint Fidelity-Philadelphia Trust Company of Philadelphia, Pennsylvania, Lewis W. Everly, Wilbert J. Nigbee, Joseph H. Carr, Henry L. Lippincott, and S. Walter Brown."
The complainants are collateral relatives of the testator, and others in like situations are named as defendants. That part of the will which is attacked relates to the home and school to be known as "William McCully Home and School for Orphan Boys," the claim being made that the trust provisions are void for uncertainty, and that the trust violates the rule against perpetuities.
At the hearing, the proofs showed that the testator was himself an orphan of the class sought to be benefited by this trust, that he was childless and a widower, and having none but collateral relatives, it seemed quite natural that he should have selected this particular form of charity. The estate consists of approximately $225,000, free of debts with the exception of certain taxes of no substantial amount, executors' commissions, counsel fees and administration costs and expenses, and expenses of this litigation. The capital value of the annuities at the age of annuitants, based upon the expectancy of life as set forth in the tables of Giauque and McClure admitted in evidence, is approximately $62,000. The Fidelity-Philadelphia Trust Company, one of the trustees named to carry out the trust, has renounced, but it is disclosed by the testimony taken that the remaining trustees are willing to serve, the majority of them having testified that the trust could be carried out by them and that they were willing to act.
The trust is attacked because it is alleged to be indefinite, uncertain and impossible of execution. It is urged that the trust is indefinite because it is impossible to determine what children are eligible to be admitted to the school, due to the direction that the trustees should select children "with Christian antecedents." "Antecedent," as referring to a person, *Page 66 
and as applied to the language used in this will, would mean an ancestor, in other words, a parent, grandparent, great-grandparent, c. It is hardly necessary to say that a Christian is one who believes or professes, or is assumed to believe in Jesus Christ and the truth as taught by Him, and therefore the trustees could easily determine from such proof as they might require, who might be considered as a child "with Christian antecedents." It would be entirely within the scope of their discretion and duty to determine, by such requirements as would satisfy them, the eligibility of orphan boys as coming within the scope of "Christian antecedents."
I think the will in question is not void for uncertainty as to determination of the beneficiaries under a charitable trust. SeeHesketh v. Murphy, 35 N.J. Eq. 23; affirmed, 36 N.J. Eq. 304,
in which the trust established is for the most deserving poor of the city of Paterson.
The complainant contends that the provisions of paragraph 7-e, having reference to accumulations as well as to expenditures of moneys, is indefinite and uncertain, and therefore incapable of being carried out. A reading of this paragraph indicates that the testator had a certain definite thought in mind respecting the necessity for accumulations in order to provide for the expansion of the school and for its operation to take care of the prospective increase of the population in the community wherein the home should be established. I find no legal objection that will prevent this provision of the will from being carried out.
By paragraph 7-h of the will, the trustees are authorized in their discretion to cause the formation of an eleemosynary corporation for the purpose of carrying out the terms of the trust, with authority to vest the title and management of all funds of such trust in such corporation, and providing that the directors or other governing body or trustees should be identical with the trustees of the trust under the will. Eleemosynary corporations organized to carry out a charity are quite common and have been recognized by the courts of this state in many cases. Kitchen v. Pitney, 94 N.J. Eq. 485; Patton v. Pierce,114 N.J. Eq. 548. *Page 67 
Further objection is made to that part of the will providing the method for the appointment of a successor to a trustee because of the death or removal of any trustee, or in the event that any trustee becomes incompetent to act. The plan set up in the will in paragraph 7-i, providing for a board of appointment consisting of certain judges, together with two of the trustees in office at the time, seems to be a workable one, and even if some contingency should arise which cannot be anticipated at this time by reason of which this provision becomes unworkable, this court would have jurisdiction to supply the vacancy by the appointment of a new trustee if it should be found necessary in order to carry out the trust. In the case of Nichols v. TheNewark Hospital, 71 N.J. Eq. 130, Vice-Chancellor Stevens said: "Nothing is better settled than that the law does not permit a charitable trust, capable of execution, to remain unexecuted for want of a competent trustee."
It is further contended on the part of the complainants that the will directs that no compensation be paid to the trustees for any services in respect to the management and operation of the school; that they shall serve without compensation, and if not willing to serve on that basis they shall be ineligible to serve. It is certainly not unusual, but on the contrary quite usual, that trustees of a charitable institution serve without compensation, and it may reasonably be assumed that the trustees named in this will and those who may be appointed as their successors will so serve. This objection I consider without merit.
While other matters were discussed in connection with the carrying out of this charity provided under testator's will, one having respect to the insufficiency of the fund, yet I do not consider any of them of sufficient merit to disturb the plain intent of the testator to establish this home. I think he has, by his will, expressed with sufficient exactitude, his intentions, and I see no reason why I should enlarge further upon the questions involved.
A decree in accordance with these conclusions. *Page 68