7 N.J. Super. 117 (1950)
72 A.2d 383
ARTHUR R. WENDELL, FRANK WHITEHEAD AND FIDELITY UNION TRUST COMPANY, A TRUST COMPANY ORGANIZED UNDER THE LAWS OF THE STATE OF NEW JERSEY, AS EXECUTORS OF AND TRUSTEES UNDER THE LAST WILL AND TESTAMENT OF CLARA VANDERHOVEN, DECEASED, PLAINTIFFS-RESPONDENTS,
v.
THE HAZEL WOOD CEMETERY, A NEW JERSEY CORPORATION, AND RAHWAY HOSPITAL, A NEW JERSEY CORPORATION; WALTER D. VAN RIPER, ATTORNEY-GENERAL OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS, AND HALSEY VANDERHOVEN, THELMA BENNETT WEBB, LESTER MUNDY, JOSEPH C. POTTER, AND ALBERT F. KIRSTEIN, INDIVIDUALLY AND AS CLASS REPRESENTATIVES OF THE NEXT-OF-KIN AND HEIRS-AT-LAW OF CLARA VANDERHOVEN, DECEASED, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 9, 1950.
Decided March 27, 1950.
*119 Before Judges JACOBS, DONGES and BIGELOW.
*120 Messrs. Riker, Emery & Danzig, attorneys for plaintiffs-respondents.
Mr. Maja Leon Berry argued the cause for the defendant-respondent, The Hazel Wood Cemetery (Messrs. Berry, Whitson & Berry, attorneys).
Messrs. Hyer & Armstrong, attorneys for defendant-respondent, The Rahway Hospital.
Mr. Samuel Lanzet argued the cause for defendants-appellants, Halsey Vanderhoven, Thelma Bennett Webb, Lester Mundy, Joseph C. Potter and Albert F. Kirstein, as class representatives of the next-of-kin and heirs-at-law of Clara Vanderhoven, deceased (Messrs. Bernard M. Degheri and Thomas L. Hanson, attorneys).
Messrs. Besson & Applegate, attorneys for defendants-appellants, Clarence Brown, Sr., also known as Clare H. Brown, and Marva Bagg.
Mr. Walter D. Van Riper, special counsel to the Attorney General of the State of New Jersey.
The opinion of the court was delivered by DONGES, J.A.D.
This is an appeal from a judgment entered in the Superior Court, Chancery Division.
The plaintiffs, as executors and trustees of the last will and testament of Clara Vanderhoven, deceased, instituted an action in the Superior Court, Chancery Division, asking for a construction of the third paragraph of decedent's will and for other instructions.
The decedent died a resident of Union County, New Jersey, on April 29, 1946. At the time of her death, she was 96 years old and a spinster. She left neither father, mother, brother or sister surviving her. Her nearest next of kin were two first cousins who are party defendants to this suit and many distant relatives who are likewise parties herein. Decedent's *121 will was probated in the Prerogative Court on May 15, 1946, and letters testamentary were issued thereon to plaintiffs.
By her last will and testament, testatrix gave the residue and remainder of her entire estate to plaintiffs in trust for the following uses and purposes:
"b: From the principal of the trust fund to erect on lands in said Hazel Wood Cemetery, if sufficient lands in said Cemetery can be acquired therefor, otherwise on lands adjacent thereto, a Chapel  in memory of my father, James Vanderhoven, my mother, Mary Vanderhoven, my brother, Ross Vanderhoven and myself  to be used, without distinction as to creed, for mortuary and memorial services for persons buried in said Cemetery or any other Cemeteries or burying grounds in the vicinity thereof; and to expend for the erection of said Chapel not less than the sum of One Hundred Thousand Dollars nor more than the sum of Two Hundred Thousand Dollars. Such Chapel to be built of granite and in Gothic style and to have a seating capacity of seventy-five to one hundred and twenty-five.
"c: To invest and reinvest the balance of the trust fund in such securities as are legal investments for Savings Banks in the State of New Jersey and collect the income therefrom.
"d: To use so much of the net income as may be necessary for the care and preservation of such Chapel, including the salary of a care-taker and the heating of such building when necessary.
"e: Should the income from the funds of the Hazelwood Cemetery Association, in the judgment of my trustees or the survivors or survivor of them, be insufficient to properly care for said Cemetery, then to use so much of the balance of the net income for that purpose as my said trustees may deem necessary.
"f: To pay, semi-annually, so much of the balance of the net income from the trust fund to the Rahway Hospital, at Rahway, New Jersey (by whatever name said Hospital may be known) if and when a new Hospital shall have been erected, as may be necessary to defray any deficiency in the general operating expenses of such Hospital. Interest on debts or obligations of said Hospital shall not be construed as general operating expenses.
"g. To add any surplus income there may be to the principal of the trust fund."
The defendants contend that the gifts to the Hazel Wood Cemetery and to the Rahway Hospital are violative of the rule against perpetuities and, therefore, are void. They further contend that the provisions of the will applying to the accumulation of income are invalid.
*122 The court below found that all the gifts were valid and awarded judgment accordingly.
The defendants concede that both the Hazel Wood Cemetery and the Rahway Hospital are charitable institutions. That the testamentary gift to the Hazel Wood Cemetery is charitable is amply shown by numerous decisions of our courts. See MacKenzie v. Trustees of Presbytery of Jersey City, infra; Noice v. Schnell, 101 N.J. Eq. 252 (E. & A. 1927); George v. Braddock, 45 N.J. Eq. 757 (E. & A. 1889); Vineland Trust Co. v. Westendorf, 86 N.J. Eq. 343 (Ch. 1916); affirmed, 87 N.J. Eq. 675 (E. & A. 1917); Woodstown Nat'l. Bank, etc., Co. v. Snelbaker, 136 N.J. Eq. 62 (Ch. 1944); affirmed, 137 N.J. Eq. 256 (E. & A. 1945). That the Rahway Hospital is a charitable institution and that the gift to it is for charitable purposes is well supported by the case of Nichols v. Newark Hospital, 71 N.J. Eq. 130 (Ch. 1906). However, defendants contend that the gifts are subject to conditions and contingencies which may not occur within the time limited by the rule against perpetuities and are, therefore, invalid.
It is pertinent to note that, with certain exceptions not involved in this case, the rule against perpetuities does not apply to testamentary gifts solely for charitable purposes. Moore's Executor v. Moore, 50 N.J. Eq. 554 (Ch. 1892); Mills v. Davison, 54 N.J. Eq. 659 (E. & A. 1896); MacKenzie v. Trustees of Presbytery of Jersey City, 67 N.J. Eq. 652 (E. & A. 1905); Gallagher v. Venturini, 124 N.J. Eq. 538 (Ch. 1938).
The defendants, however, contend that there are two forms of the rule against perpetuities. One form is applicable to vested interests and is directed against restraints upon alienation. The other form is applicable to future interests and is directed against postponement of vesting. It is their contention that the latter form has application even to gifts to charities. It is not necessary for us to consider this contention because the gifts in question are clearly vested gifts.
The policy of the law requires that legacies should be held to be vested rather than contingent, unless this clearly *123 contravenes testator's intention. In re Buzby's Estate, 94 N.J. Eq. 151 (E. & A. 1922); Camden Safe Deposit & Trust Co. v. Scott, 121 N.J. Eq. 366 (E. & A. 1937); Haas v. Canton of Berne, 140 N.J. Eq. 240 (Ch. 1947).
Where the time specified in the bequest is annexed to the payment only, the legacy nevertheless vests immediately on the death of the testator. It is a present gift. The time of payment only is postponed. Neilson v. Bishop, 45 N.J. Eq. 473, 17 A. 962 (Ch. 1889).
It has repeatedly been held that it is the uncertainty of the right of enjoyment, and not the uncertainty of actual enjoyment, that renders an interest contingent. Cody v. Fitzgerald, 2 N.J. 93 (Sup. Ct. 1949); Kahn v. Rockhill, 132 N.J. Eq. 188, 191 (Ch. 1942); affirmed, 133 Id. 300 (E. & A. 1943); Hopper v. Gurtman, 126 N.J.L. 263 (E. & A. 1940); Restatement, Property (Future Interests), § 157, Comment on Clause (a), f, p. 546; 3 Page on Wills, § 1257, p. 679.
The gift in question was not made directly to the legatees but to the trustees for the use and benefit of the legatees. The trustees hold the corpus by as perfect a title as could be made, but for the benefit of the cestuis que trust. A gift in this form is in equity equivalent, in all respects, to a direct gift to the cestuis que trust. Neilson v. Bishop, supra. The gift is absolute and vested immediately upon the death of the testatrix. The conditions, which defendants claim invalidate the gifts, are not conditions to the vesting but only to the time of the enjoyment.
There is no doubt, from the reading of the will, that testatrix intended the gifts to vest upon her death. She merely set forth the manner and time of applying the funds to the particular uses. The money was to be used when certain deficiencies existed in the funds of the donee charities. It is mandatory upon the trustees to ascertain when such deficiencies exist.
Since the gifts are immediate gifts to charities, the rule against perpetuities does not apply. In Scott on Trusts, Vol. III, § 401.8, the text reads, in part, as follows:
*124 "If, however, there is an immediate vested gift to charity, the gift is valid although it is provided that the property shall not be applied to the charitable purposes until the happening of an event which may not occur within the period of the rule against perpetuities."
To the same effect, see Restatement of the Law, "Trusts," Comment K, § 401 in Vol. II; 48 Corpus Juris 986, par. 78, B.
The gifts in question are, therefore, valid.
The only question remaining is whether the provision for accumulation of income renders the gifts invalid. Where, as here, there is an immediate vesting of a trust fund, for charitable purposes, a will is not void because it directs or permits accumulations for an unspecified period of time. Conway v. Third Nat'l. Bank, etc., Camden, 118 N.J. Eq. 61 (Ch. 1935); affirmed, 119 N.J. Eq. 575 (E. & A. 1935). This is also supported by Gray on Perpetuities (4th Ed.) p. 630, par. 678; Restatement, Trusts, par. 401, Comment L. The text of Gray on Perpetuities, supra, reads in part as follows:
"Where there is an unconditional gift to charity, the gift will be regarded as immediate and good, although the particular mode of carrying out the charity which the donor has indicated is too remote. Consequently in such a case if a direction for accumulation is invalid the only result is that the income is immediately distributable in charity; the heirs or next of kin are not let in."
And at page 633, par. 679:
"If the purpose of the trust cannot be carried out without accumulation for too long a period, the fund will be applied cy pres."
See also Conway v. Third Nat'l. Bank, etc., Camden, supra.
In the light of the foregoing authorities, we conclude that the direction for accumulation is valid. If some time in the future the accumulations should appear to a court of competent jurisdiction to be unreasonable, the accumulations might be ordered distributed in a proper fashion. There is no present necessity for determining this question; it may *125 be settled when it arises, if it ever arises. Conway v. Third Nat'l. Bank, etc., Camden, supra.
In the instant case, a reading of the will clearly indicates that testatrix was motivated by a desire to render the future of the two charitable enterprises improved and their continuation certain. To accomplish these ends, she gave all of her estate, with the exception of one small bequest of $500.00 to an individual, to the two charities. The law favors testacy, and it appears that the clear intention of testatrix was to make available her entire estate for the uses of the charitable donees. It was equally clear that she did not intend or desire that appellants, or any other individuals, should profit by her estate to the disadvantage of the charitable beneficiaries named in her will. As stated by the learned judge below, it is probable that both beneficiaries will need all of the income made available to them. In any event, it is for future determination, as stated above.
The judgment under review is affirmed.
BIGELOW, J.A.D. (concurring).
Whether the chapel be considered a charitable object or not, the trust to erect it is valid. Detwiller v. Hartman, 37 N.J. Eq. 347 (Runyon, C., 1883). But the trust for the care and preservation of the chapel is not valid unless it is charitable. Detwiller v. Hartman. The key words of the will are "a chapel * * * to be used without distinction as to creed for mortuary and memorial services for persons buried," etc. Perhaps no religious or other charitable purpose can be inferred from the words "mortuary and memorial services;" but chapel means a place of worship and, coupled with the direction that it be used "without distinction as to creed," permits a finding of a religious charity. And the use, whether religious or not, seems to be within the broad definition of Woodstown Nat'l. Bank & Trust v. Snelbaker, 136 N.J. Eq. 62; affirmed, 137 Id. 256 (1945). But see Livesey v. Jones, 55 N.J. Eq. 204; affirmed. Chadwick v. Livesey, 56 Id. 453 (1897). Hazel Wood Cemetery is a charity. Atlas Fence Co. v. West Ridgelawn Cemetery, 110 N.J. Eq. 580 (E. & A. 1932); Woodstown *126 Nat'l. Bank, etc., Co. v. Snelbaker, supra. See also R.S. 8:2-30. And the hospital, of course, is a charity. Nichols v. Newark Hospital, 71 N.J. Eq. 130 (Stevens, V.C., 1906).
The gift to the hospital is upon a condition: "If and when a new hospital shall have been erected." I understand that a new hospital was erected between the date of the will and the date of testatrix' death. A will of personal property generally speaks as of the time of death. Y.M.C.A. of Matawan v. Appleby, 97 N.J. Eq. 95; affirmed, 98 Id. 704 (1925). But this rule of construction yields when it interferes with the apparent meaning and purpose of testator. Thornal v. Executors of Force, 29 N.J. Eq. 220 (Van Fleet, V.C., 1878); Henderson v. Henderson, 77 N.J. Eq. 317 (Stevens, V.C., 1910); Hartshorne v. Central Union Trust Co., 103 N.J. Eq. 111 (Backes, V.C., 1928). The condition in the Vanderhoven will should be regarded as fulfilled by the erection of the hospital in the lifetime of testatrix.
There is given for the care of the chapel "so much of the net income as may be necessary." The gift to the Cemetery Association is in form contingent: Should the income of the Association in the judgment of the testamentary trustees "be insufficient to properly care for said cemetery, then to use so much of the balance of the net income for that purpose as my said trustees may deem necessary." To the hospital is given semi-annually "so much of the balance of the net income * * * as may be necessary to defray any deficiency in the general operating expenses of such hospital."
I think in each case there is a single present gift, vesting upon testatrix' death, of an amount of income to be determined periodically, rather than a series of gifts, each contingent until the trustees determine whether any and how much money is necessary for that year or half year. A helpful decision is In re Cassel (1926), Ch. 358, where there was a trust, not charitable, to pay taxes and other charges in respect to certain premises and the expense of keeping the same and its contents in a proper state of preservation. Since the period during which the payments were directed might exceed lives *127 in being and 21 years, counsel argued that there was a conflict with the rule against perpetuities. But the Chancery Division held that there was a single right to annual payments, which vested within the perpetuity period, and that the whole trust was valid, even though the amount payable could not be determined in advance. Note the criticism of this decision in Gray on Perpetuities (Ed. 1942), § 246, largely on the authority of In re Whiteford (1915), 1 Ch. 347. While the Cassel decision may be doubtful authority when applied to an ordinary trust, I believe it may be safely followed in the case of a charitable trust. Such trusts are especially favored and the rule against perpetuities is but little concerned with them. Noice v. Schnell, 101 N.J. Eq. 252 (E. & A. 1927).
Counsel argue that the opening phrase in the gift to the cemetery requires the trustee to determine once and for all time whether the income of the Association is sufficient. Not so. They are to make the determination periodically so that only in years when the income is insufficient, shall the Association be aided by the testamentary trust.
Lastly, the trustees are directed "to add any surplus income there may be to the principal of the trust fund."
The will of Miss Vanderhoven does not state that the trust is created for the benefit of the hospital, the cemetery and the chapel. The only indication that they have an interest in the trust is found in the direction to pay them a part of the income. The gift to the three institutions of so much income as may be necessary, may be likened to a gift for the support of an individual. Income not needed for support does not belong to the named beneficiary or go to his estate at his death, but unless other disposition of it is made, there results a partial intestacy, so that the excess income goes to testatrix' next of kin yearly. Page on Wills, § 1171; see Schumacher v. Howard Savings Institution, 128 N.J. Eq. 56; affirmed, 131 Id. 211 (1942). But in the will before us we have an express direction to add the surplus income to principal without limitation as to time or amount. If this direction is valid, the charities, and especially the hospital, *128 may have an indirect benefit from the surplus income, a further assurance that operating expenses will be met.
The proofs indicate that the annual income of the trust may be about $35,000, of which, say, $4,000 will go for maintenance of the chapel. As to the cemetery, counsel say it needs grading, shrubbery, etc., that may cost $100,000. But it would seem likely that these are capital expenses and not within the trust. The cemetery is not very large and has a small perpetual care fund. $5,000 from the trust will probably be ample for its current needs. That would leave a balance of $25,000 out of which any deficiency in the operating expenses of the hospital may be met. We are told nothing of the size of the hospital or its other income. Let us assume that $10,000 or $15,000 from the testamentary trust will meet its deficit and that there will be surplus income of $10,000 a year or more. There is no ground for believing that a fund of unreasonable or dangerous magnitude will accumulate. And, of course, there may not be surplus income every year,  or any year.
First Camden National Bank & Trust Co. v. Collins, 114 N.J. Eq. 59, reversing 110 N.J. Eq. 623 (1933), dealt with a trust to accumulate income during certain lives plus 21 years, and then to turn over the augmented fund to a corporation to be formed for education. Observe that the gift both of corpus and accumulation was contingent throughout the period, since the donee was not then in existence. Our highest court held that the whole trust was void because the accumulations would cover too long a period. See criticism of this case in Scott on Trusts, § 401.9, at page 2145. Conway v. Third National Bank & Trust Co., 118 N.J. Eq. 61; affirmed, 119 Id. 575 (1935), was concerned with a will which created a trust to accumulate income for "not more than 20 years" and then to establish a school which should thereafter be supported out of the income. There was a clause of doubtful meaning directing that excess income be accumulated thereafter for emergencies and for enlarging the school. The appellate court said that this clause might impose an unreasonable and invalid restraint upon the use of *129 property "but at the moment further discussion of the question must needs be purely academic and we see no reason for its determination until the occasion arises, if it ever does arise." See also Wardens & Vestry of St. Paul's Church v. Attorney General, 164 Mass. 188, 41 N.E. 231 (Mass. 1895); Restatement-Trusts, § 401, Comment L, and Scott on Trusts, § 401.9.
I agree with my colleagues that we should follow the Conway case and hold that the direction to accumulate surplus income does not now appear to be invalid. The Attorney General or the next of kin should be permitted hereafter to bring the matter again to the Court's attention. If it shall then appear that the fund is growing too large, the Court may then determine whether the surplus belongs to the next of kin or should be applied cy-pres.