96 N.J. Super. 428 (1967)
233 A.2d 195
MONTCLAIR NATIONAL BANK AND TRUST COMPANY, ET AL., EXECUTORS UNDER THE WILL OF FRANCIS M. CRAWLEY, DECEASED, PLAINTIFFS-RESPONDENTS,
v.
SETON HALL COLLEGE OF MEDICINE AND DENTISTRY, SETON HALL UNIVERSITY, THE ROMAN CATHOLIC DIOCESE OF NEWARK, LITTLE SISTERS OF THE POOR, ETC., AND ST. JAMES HOSPITAL OF NEWARK, DEFENDANTS-APPELLANTS, AND EILEEN CRAWLEY PHELAN (AND SEVEN OTHERS), DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 10, 1967.
Decided August 18, 1967.
*431 Before Judges LEWIS, LABRECQUE and KOLOVSKY.
*432 Mr. Thomas H. Gassert argued the cause for appellants Seton Hall College of Medicine and Dentistry, Seton Hall University and The Roman Catholic Diocese of Newark (Messrs. Gassert and Murphy, attorneys; Mr. Joseph A. Clarken, Jr., on the brief).
Mr. Frank J. Vecchione argued the cause for appellant, Little Sisters of the Poor (Messrs. Crummy, Gibbons & O'Neill, attorneys).
Mr. Ira C. Moore, Jr., argued the cause for appellant, Saint James Hospital of Newark (Messrs. Whiting, Moore, Hunoval & Herman, attorneys).
Mr. Max Spinrad, Deputy Attorney General argued the cause for respondent New Jersey College of Medicine & Dentistry (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
No brief or appearance for respondents Montclair National Bank and Trust Company, et al., Executors.
The opinion of the court was delivered by LEWIS, J.A.D.
This proceeding was instituted by the executors of the estate of Francis M. Crawley, deceased, for judicial instructions relative to the disposition of a 1/18th share distributable under the residuary clause of testator's will. These consolidated appeals are by defendants who are some of the residuary legatees under the will. They appeal from a Chancery Division judgment directing that testator's gift of that share to the Seton Hall College of Medicine and Dentistry (herein Seton Medical) be paid to the New Jersey College of Medicine and Dentistry (herein New Jersey Medical) as cy pres successor beneficiary. 90 N.J. Super. 419 (1966).
*433 The facts essential for our review are as follows: Testator died May 21, 1963 and his will was admitted to probate June 7, 1963. Following several gifts, absolute and in trust to respective beneficiaries, the testament provides:
"SEVENTEENTH: All the rest, residue and remainder of my estate of whatsoever nature and wheresoever situate, I give, devise and bequeath as follows:
1. One-Eighteenth (1/18) to Seton Hall University Medical School [sic] at Jersey City, New Jersey.
2. One Eighteenth (1/18) to Seton Hall University at South Orange, New Jersey.
3. One-Ninth (1/9) to my sister, Mary Amelia Crawley.
4. One-Ninth (1/9) to my niece, Eileen Crawley Phelan.
5. One-Ninth (1/9) to my nephew, Francis Thomas Crawley.
6. One-Ninth (1/9) to the Caldwell College for women.
7. One-Ninth (1/9) to the Roman Catholic Diocese of Newark, New Jersey.
8. One-Ninth (1/9) to New York Province of the Society of Jesus of New York City, New York.
9. One-Ninth (1/9) to the Little Sisters of the Poor, of Newark, New Jersey.
10. One-Ninth (1/9) to be equally divided among St. Joseph's Hospital, in Paterson, New Jersey, St. Mary's Hospital in Orange, New Jersey and St. James Hospital in Newark, New Jersey.
In the event that any of the residuary beneficiaries herein named shall predecease me, I give, devise and bequeath his or her said fractional share equally to surviving residuary beneficiaries." (Emphasis supplied)
Seton Medical was incorporated in 1954 and continued as an active institution for medical training until May 3, 1965, when it sold its assets to New Jersey Medical. See N.J.S.A. 18:22-150 et seq. The Seton Medical corporation is still extant but it is now primarily concerned with the payment of its debts which are substantially in excess of any contemplated inheritance under the Crawley will. Schedule C of the sales agreement which listed gifts, grants and contract awards contemplated to be sold and transferred to New Jersey Medical did not include the legacy in controversy.
About December 10, 1964 the executors paid an advance on the legacy to Seton Medical in the amount of $1,500. On May 25, 1965, two weeks after Seton Medical ceased its active *434 pedagogical endeavors, the executors announced that they were ready to make final distribution. On that date a 1/18th share of the residuary estate had a value of $43,526.05.
Seton Medical contended before the Chancery Division, as it does here on appeal, that, notwithstanding the fact that it had ceased its active educational program, it was entitled to its residuary share of the estate because the legacy vested at testator's death and nothing had transpired to cause a divestiture. The trial court disagreed and decided that "the intention of the testator would be most nearly approximated if the New Jersey College of Medicine and Dentistry became the cy pres successor beneficiary of the residuary portion in question." (90 N.J. Super., at p. 432) The appellants, other than Seton Medical, respectively claim all or part of the share designated for Seton Medical, either by virtue of N.J.S. 3A:3-14 (lapsed legacies) or as cy pres successors.
The determination of the Chancery Division is predicated on the fact that the estate had not been completely administered and distribution had not been accomplished by May 3, 1965. The opinion states:
"* * * Seton Hall [Medical] College may be regarded as having rejected its bequest from Mr. Crawley when, before payment, it gave up its functions as an educational institution. The significant thing is not the bare existence of an entity to receive payment but the existence of a charitable corporation or association capable of carrying on the work." (Id., at p. 428)
We conclude, however, that the effectiveness of an outright gift to a charitable institution should not thus turn on the amount of time it takes to administer an estate.
The general rule is that the title to realty vests, subject to the executor's power to sell to pay debts, upon testator's death, even before admission of the will to probate. McTamney v. McTamney, 138 N.J. Eq. 28, 31 (Ch. 1946); Ratti v. Ratti, 6 N.J. Super. 352, 356 (App. Div. 1950); 6 Page on Wills (Bowe-Parker revision 1962), § 59.2, pp. 378, 380. Title to gifts of personalty are generally held to *435 pass to the executor and then to the legatee, provided the executor acquiesces and the legatee accepts. 6 N.J. Practice (Clapp, Wills and Administration) (3d ed. 1962), § 1022, pp. 565-567. "The title in the executor, however, is a mere legal title for purposes of administration, and the beneficiary has an inchoate or equitable interest." 6 Page on Wills, op. cit., § 59.2, p. 384. Note, Traverso v. Traverso, 99 N.J. Eq. 514, 519 (Ch. 1926), affirmed o.b. sub nom. Traverso v. McMillin, 101 N.J. Eq. 308 (E. & A. 1927). The legatee thus receives a "chose in action," 5 N.J. Practice (Clapp, Wills and Administration) (3d ed. 1962), § 391, p. 571, but this interest is vested so long as there is a definite right of enjoyment, either presently or in the future. See In re Estate of Taylor, 50 Cal. Rptr. 437, 428 P.2d 301 (Sup. Ct. 1967).
The word "vest" prima facie connotes a vesting in interest, not in enjoyment or possession. In re Koellhoffer, 20 N.J. Misc. 139, 141, 25 A.2d 638, 640-641 (Orph. Ct. 1942); 5 N.J. Practice, op. cit., § 244, p. 422. A vested interest is one in which there is a present fixed right to future enjoyment, though the effective date of that enjoyment be uncertain and contingent. On the other hand, an interest is held to be contingent because the right of enjoyment is itself uncertain, not because of any uncertainty as to the date of actual enjoyment. See Cody v. Fitzgerald, 2 N.J. 93, 96-97 (1949); Wendell v. Hazel Wood Cemetery, 7 N.J. Super. 117, 123 (App. Div. 1950) and authorities therein cited. Thus, where uncertainty as to the time of actual enjoyment is the outgrowth of doubt as to the date upon which a legacy will be paid, the legacy vests immediately upon the death of testator since the bequest is deemed a present gift with only the time of payment postponed. It is only when the time element is annexed not to the payment but to the gift itself that the legacy is held to be contingent. See Gifford v. Thorn, 9 N.J. Eq. 702, 705 (Ch. 1854), affirmed 9 N.J. Eq. 725 (E. & A. 1855); Hesselbrock v. First Nat. Bk., etc., Montclair, 106 N.J. Eq. 339, 342 (Ch. *436 1930); Allen v. Burkhiser, 125 N.J. Eq. 524, 526 (Ch. 1939); Haas v. Canton of Berne, 140 N.J. Eq. 240, 245-246 (Ch. 1947); Karcher v. Karcher, 142 N.J. Eq. 349, 351 (Ch. 1938); Wendell v. Hazel Wood Cemetery, supra; Fidelity Union Trust Co. v. Potter, 8 N.J. Super. 533, 537 (Ch. Div. 1950).
We also note that, unless clearly inconsistent with testator's intention, it is the general policy of our law that legacies be construed as vested rather than contingent. Cody v. Fitzgerald, supra, 2 N.J., at p. 97; Wendell v. Hazel Wood Cemetery, supra, 7 N.J. Super., at pp. 122-123; Peterson v. Neeld, 22 N.J. Super. 469, 475 (App. Div. 1952). Indeed, "the rule or presumption in favor of vesting applies with particular force where the gift is of the residue * * *." 96 C.J.S. Wills § 936, p. 402 (1957).
Here testator's gift was absolute, it was made outright. Only the time required for the orderly administration of the estate delayed the time for payment. As such, the right of future enjoyment of the residuary legacy must be regarded as having vested in Seton Medical at testator's death, and the executors became obligated to make payment regardless of the time consumed in administration. It would appear that the executors were, in 1964, aware of this limitation on their authority for they actually paid the medical college $1,500 on account.
The opinion of the Chancery Division concedes that there would have been an immediate vesting were the medical college an individual, but it finds a significant distinction in the fact that appellant is a charitable corporation. The trial judge wrote: "The authorities, however, show that control over charitable gifts has been extended beyond the point of vesting and even beyond actual payment." (90 N.J. Super., at p. 426) We have examined the authorities relied upon and find them to be distinguishable and not controlling in the factual circumstances of this case.
As the trial judge himself observed, Nichols v. Newark Hospital, 71 N.J. Eq. 130 (Ch. 1906), In re Harrington's Estate, *437 151 Neb. 81, 36 N.W.2d 577 (Sup. Ct. 1949), In re Mills' Will, 121 Misc. 147, 200 N.Y.S. 701 (Surr. Ct. 1923), and In re Walter's Estate, 150 Misc. 512, 269 N.Y.S. 400, 402 (Surr-Ct. 1934), involved charitable institutions which were legally in existence on the date of the testator's death, but all had entirely ceased the active pursuit of their charter purposes before that date. (See 90 N.J. Super., at p. 427) Here, on the date of death, Seton Medical was actively pursuing its corporate purpose and did not cease the teaching of medicine and dentistry until two years later. Snow v. President and Trustees of Bowdoin College, 133 Me. 195, 175 A. 268 (Sup. Jud. Ct. 1934), and In re Shelton's Estate, 87 N.Y.S.2d 853 (Surr. Ct. 1942), dealt with remainder interests only intended to benefit the charity after the termination of prior life estates. Clearly there is a distinction between outright gifts of present interests with present enjoyment intended, and future interests, vested or contingent, with distribution not intended to be immediate.
The Morristown Trust Co. v. Town of Morristown, 82 N.J. Eq. 521 (Ch. 1913), case concerned a "voluntary association" of town residents which was apparently never incorporated. Note, 5A Thompson, Real Property (1957 replacement), § 2608, pp. 771-772. About eight months after testator's death, with "full knowledge" of the bequest made to the association, the entity was disbanded "without any attempt to collect the legacy," although "it might possibly have continued its existence and in some way have taken advantage of the bequest." (Id., at p. 524)
Allowing for the delay inherent in administering estates, a charitable institution has by virtue of the active pursuit of its intended purpose on the date of testator's demise, at least the right to the immediate enjoyment of a legacy; that interest is not lost by the subsequent termination of its program. 4 Scott, Trusts (2d ed. 1956), § 397.3, pp. 2795-2796. If the charity is unwilling or unable to take the gift and apply it to the purpose intended, or if it ceases to exist or pursue its charitable purpose before it succeeds *438 to the right of immediate enjoyment of the gift, cy pres can be invoked, but a right to distribution cannot justly be made to depend on the actual date of distribution. As the court stated in Rowe v. Davis, 138 N.J. Eq. 122, 125-126 (Ch. 1946):
"A legacy to a religious or charitable corporation is taken by implication, as intended to promote the purposes for which the corporation is created. If there be no indication to the contrary, the donee may employ the fund for any of the objects which are mentioned in its constitution or charter. American Bible Society v. American Tract Society, 62 N.J. Eq. 219. The gift does not lapse if the donee corporation is still in existence when the time for vesting arrives, even though the corporation meanwhile has become entirely inactive. It may take the legacy but must devote it to some proper corporate purpose. Old Colony Trust Co. v. Third Universalist Society, 285 Mass. 146, 188 N.E. 711, 91 A.L.R. 837. * * *"
Certainly, as the opinion of the Chancery Division declared, the gift was intended to promote medical education, but nowhere is it alleged that Seton Medical's debts were not contracted as the result of services and expenses related to that end. If the executors had been ready to make final distribution a few months prior to May 1965, when the future of the institution was unclear, the legacy could, and very likely would, have been used to pay these same obligations. We are of the opinion that the application of the funds here involved towards the diminution of the corporate debts would have the effect of furthering testator's intended charitable and testamentary purpose, i.e., the payment of expenses incurred in teaching medicine and dentistry.
Having reached the conclusion that the bequest to Seton Medical vested upon testator's death, it is unnecessary to consider the several issues raised with respect to the applicability of the cy pres doctrine.
The judgment of the Chancery Division is reversed and the case is remanded for the entry of judgment directing payment to Seton Medical.